**No. 25-6624**

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

S.P., by and through her guardians C.P. and D.P.,
Plaintiffs - Appellants,
v.
SEATTLE PUBLIC SCHOOLS, a quasi-municipal corporation,
Defendants - Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON
2:25-cv-00286-BJR
(Honorable Barbara J. Rothstein)

**APPELLANTS' OPENING BRIEF**

Alex Hagel
Lara Hruska
CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA, 98104-2246

*Counsel for Appellants*

## Table of Contents


Table of Contents ..... i

Table of Authorities ..... ii

I. INTRODUCTION ..... 1

II. STATEMENT OF JURISDICTION ..... 4

III. STATEMENT OF ISSUES ..... 4

IV. STATEMENT OF THE CASE ..... 5

V. STANDARD OF REVIEW ..... 9

VI. ARGUMENT ON APPEAL ..... 11

1. The District Court erred by interpreting the IDEA to conclude that SSD is not obligated to comply with federal law ..... 12

a. Local Educational Agencies, such as SSD, that receive IDEA funding are required to comply with the IDEA. ..... 12

b. 20 U.S.C. § 1413 does not relieve Seattle Public Schools from its obligation to comply with federal law ..... 18

i. The plain language of 20 U.S.C. § 1413 does not limit liability for violating the IDEA. ..... 18

ii. The statutory and legislative history of 20 U.S.C. § 1413(a)(1) explicitly rejects the District Court's interpretation. ..... 23

iii. The District Court's interpretation of 20 U.S.C. § 1413(a)(1) is inconsistent with how the federal courts have interpreted the EHA/IDEA from its creation. ..... 26

c. Washington's "State policies and procedures established under Section 1412" also requires LEAs to comply with

federal law. .......................................................................28

2. S.P., as an SSD student with disabilities in Washington, was guaranteed under the IDEA a substantive right to special education and related services until her twenty-second birthday. ..........................................................................29

a. The IDEA guarantees a FAPE to students until their twenty-second birthday in Washington. ..........................30

b. By failing to develop an IEP reasonably calculated to provide S.P. a FAPE until her twenty-second birthday, SSD, as a matter of law, violated the IDEA. ...................33

3. SSD's other argument, that Wash. Rev. Code § 28A.155.020 was in effect at the time S.P. was exited from special education, should be rejected. .................................................36

a. The Conflict Preemption Doctrine requires compliance with federal law when in conflict with state law, especially in the IDEA context. .......................................36

b. Lower Courts are required to give retroactive effect to binding Court of Appeals decisions. ................................40

VII. CONCLUSION ..........................................................................42

CERTIFICATE OF COMPLIANCE ..........................................................44

STATEMENT OF RELATED CASES .......................................................45

CERTIFICATE OF SERVICE ...............................................................45

## Table of Authorities

### Cases

*Arlington Cent. School Dist. Bod. Of Educ. v. Murphy,*
548 U.S.C. 291, 296 (2006) ..............................................................19

*Bellevue School Dist. No. 405 v. Brazier Const. Co.,*
100 Wash.2d 776, 779, 675 P.2d 232 (Wash 1984) ....................................27

*Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley*,
458 U.S. 176 (1982) .......... 25

*Corey H. v. Bd. of Educ. of City of Chicago*,
995 F. Supp. 900 (N.D. Ill.1998) .......... 15, 16, 17

*Croft v. Issaquah Sch. Dist. No. 411*,
22 F.4th 1048 (9th Cir. 2022) .......... 9

*Doe by Gonzales v. Maher*,
793 F.2d 1470 (9th Cir. 1986) .......... 20, 36

*E.R.K., v. Hawaii Dept. of Educ.*,
728 F.3d 982 (9th Cir. 2013) .......... passim

*East Ramapo Cent. School District v. DeLorenzo*,
13-CV-1613, 2013 WL 5508392 (S.D.N.Y. October 3, 2013) .......... 26

*Endrew F., v. Douglas County School Dist. RE-1*,
580 U.S. 386 (2017) .......... 33

*Fetto v. Sergi*,
181 F. Supp. 2d 53 (D. Conn. 2001) .......... 16

*Hacienda La Puente Unified School Dist. of Los Angeles v. Honig*,
976 F.2d 487 (9th Cir. 1992) .......... 20, 36

*Harper v. Virginia Dept. of Taxation*,
509 U.S. 86 (1993) .......... 40

*Hoeft v. Tucson Unified Sch. Dist.*,
967 F.2d 1298 (9th Cir. 1992) .......... 29

*Honig v. Doe*,
484 U.S. 305 (1988) .......... 20

*J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*,

626 F.3d 431 (9th Cir. 2010) ........................................................... 10

*Jose P. v. Ambach,*
669 F.2d 865 (2nd Cir. 1982) ........................................ 14, 15, 16, 17

*Kalliope R. ex rel. Irene D. v. N.Y. State Dep't of Educ.*,
827 F. Supp. 2d 130 (E.D.N.Y. 2010) .......................................... 14, 16

*Kuhn v. Fairmont Coal Co.*,
215 U.S. 349 (1910) ....................................................................... 39

*M.G. by Priscilla G. v. Yakima Sch. Dist. No. 7*,
24 Wash. App. 2d 703, 524 P.3d 670, 680 (Wash. Ct. App. 2022) .... 33

*M.R. v. Yelm School District,*
3:24-cv-05533 (W.D. Wash. March 11, 2025) ........................ 36, 37, 38

*Maryland v. Louisiana*,
451 U.S. 725 (1981) ............................................................... 35, 36

*McCulloch v. Maryland*, .......................................................................
4 Wheat. 427 (1819) ..................................................................... 35

*Mutual Pharmaceutical Co., Inc. v. Bartlett*,
570 U.S. 472 (2012) ............................................................... 35, 38

*N.D. v. Reykdal,*
102 F.4th 982 (9th Cir. 2024) .................................................. passim

*N.D. v. Reykdal,*
2:22-cv-016121-LK, 2024 WL 3358743
(W.D. Wash., July 10, 2024) ............................................................. 7

*N.D. v. Reykdal,*
2:22-cv-016121-LK, 2024 WL 4875055
(W.D. Wash., November 22, 2024) ..................................................... 8

*N.D. v. Reykdal,*
2:22-cv-016121-LK, 2025 WL 1736639 (W.D. Wash. June 23, 2025)

........................................................................................9, 12

*Quatroche v. E. Lyme Bd. of Educ.*,
604 F. Supp. 2d 403 (D. Conn. 2009) ................................................16

*R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*,
496 F.3d 932 (9th Cir. 2007)..........................................................10, 38

*R.B. v. Mastery Charter School,*
532 Fed. Appx. 136 (3rd Cir. 2013) ...............................................20, 21

*R.L. v. Miami-Dade County School Bd.,*
757 F.3d 1173 (11th Cir. 2014)...........................................................26

*R.P. v. Prescott Unif'd Sch. Dist.*,
631 F.3d 1117 (9th Cir. 2011)...........................................................33

*Reid ex rel. Reid v. D.C.*,
401 F.3d 516 (D.C. Cir. 2005)............................................................33

*Rivers v. Roadway Exp., Inc.*,
511 U.S. 298 (1994)......................................................................39, 40

*U.S. v. City of Tacoma, Wash.,*
332 F.3d 574 (9th Cir. 2003).............................................................40

*Union School Dist. v. Smith,*
15 F.3d 1519 (9th Cir. 1994)..............................................................18

*United States v. Patrick,*
--- F.4th ---- (9th Cir. 2025) 2025 WL 3692950....................................9

*Van Duyn v. Baker Sch. Dist. 5J*,
502 F.3d 811 (9th Cir. 2007)....................................................9, 12, 32

**Statutes**

18 U.S.C. § 1291...........................................................................................3
20 U.S.C. § 1400 *et seq* ..........................................................................28, 29
20 U.S.C. § 1401 ..........................................................................................26

20 U.S.C. § 1412 ........ passim
20 U.S.C. § 1412 (1976) ........ 23
20 U.S.C. § 1413 ........ passim
20 U.S.C. § 1413 (1997) ........ 23
20 U.S.C. § 1414 ........ 32
20 U.S.C. § 1414 (1976) ........ 22, 23
20 U.S.C. § 1415 ........ 1, 4, 12, 19, 21
Wash. Rev. Code § 28A.155.020 ........ 2, 34, 35, 38
Wash. Rev. Code § 28A.225.230 ........ 37
Wash. Rev. Code § 28A.155.260 ........ 32

**Rules**

Fed. R. App. P. 4(a)(1)(A) ........ 4

**Regulations**

34 C.F.R. 300 et. seq. 28
Wash. Admin. Code 392.172A.06000 27, 28

# I. INTRODUCTION

Under the Individuals with Disabilities Education Act ("IDEA"), students with disabilities have a substantive right to access a Free Appropriate Public Education ("FAPE") until that student turns twenty-two years old or until the student is exited from special education for a reason other than age. Despite that mandate, Seattle Public Schools ("SSD" or "District") exited Plaintiff-Appellant S.P., a student with significant disabilities, from special education at the end of the school year in which she turned twenty-one solely due to her age. The District's actions thus deprived S.P. of an additional year of special education services she was entitled to. The District's actions therefore violated the IDEA and denied S.P. a FAPE.

In September of 2024, S.P., by and through her parents and legal guardians, filed for Due Process pursuant to 20 U.S.C. § 1415 against SSD, alleging the District's actions violated the IDEA. S.P. sought summary judgment before Washington's Office of Administrative Hearings on the District's liability for its failure to provide her a FAPE until her twenty-second birthday given the longstanding Ninth Circuit precedent had established that "a student's eligibility for IDEA services

ordinarily ends on his twenty-second birthday," and S.P.'s exit was based on her age and not any of the exceptions to this general rule. *E.R.K., v. Hawaii Dept. of Educ.,* 728 F.3d 982, 986 (9th Cir. 2013). When summary judgment was sought in this case, disabled students in Washington (including S.P.) were, and in fact had always been, entitled to special education until their twenty-second birthday. *See N.D. v. Reykdal,* 102 F.4th 982, 994 (9th Cir. 2022)(" The record here shows that Washington does not shut the door to free public education to all 21-year-olds—only disabled ones. The IDEA does not permit it to do so.").

The District in its own motion for summary judgment argued that the former version of Wash. Rev. Code § 28A.155.020 shielded it from liability because it was "the law in effect at the time." 3-ER-316. The Administrative Law Judge (ALJ) erroneously agreed, holding, among other things "the Parents have not offered any authority to establish that decisions invalidating RCW 28A.155.020 and WAC 392-172A-02000(2)(c) applied retroactively regarding school districts" and that "the [District Court in *Reykdal* 102 F.4th 982] did not consider or make a ruling on whether individual school districts violated the IDEA by

complying with state policy and law in effect at the time." 3-ER-323. Because the ALJ's decision failed to apply binding precedent, failed to recognize the supremacy of federal law over state law, and failed to give retroactive effect to judicial interpretation of those laws, S.P. appealed the decision to the Western District of Washington. 3-ER-333.

At the District Court, SSD's new principal argument was that the obligations under 20 U.S.C. § 1412(a)(1)(A) do not apply to SSD, and instead the District need only comply with the "state policies and procedures" adopted under 20 U.S.C. § 1412, pursuant to 20 U.S.C. § 1413(a)(1). *See* 2-ER-057 The District Court adopted this argument, holding "the District is not a proper defendant to this action because the District was not responsible for independently determining whether it was required to comply with state laws and regulations." The District Court affirmed the ALJ's decision on this rationale alone.

No other court has ever held school districts are immune from liability for violating the substantive requirements of the IDEA based on 20 U.S.C. § 1413. The District Court's ruling fails to comport with the text, history, and purpose of the IDEA. Therefore, this Court should reverse the District Court's findings and remand back to the Office of

Administrative Hearings so that the ALJ can determine an appropriate remedy for SSD's denial of FAPE.

## II. STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 18 U.S.C. § 1291 over this appeal from the District Court's September 22, 2025 order, granting summary judgment to the Defendant/Appellee. 1-ER-001. Pursuant to Fed. R. App. P. 4(a)(1)(A), Appellants timely filed a notice of appeal within 30 days of the District Court's order. 3-ER-328. The District Court had subject matter jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A), providing "any party aggrieved by the findings and decisions made under this subsection, shall have the right to bring a civil action with respect to the complaint… in a district court of the United States."

## III. STATEMENT OF ISSUES

1. Whether the District Court erred in finding that Local Educational Agencies, including school districts, cannot be held liable for violating the federal substantive requirements of the IDEA. Yes.
2. Whether the District Court erred in affirming the ALJ's decision that as a matter of law SSD met its burden to show that it did not violate

the IDEA by denying S.P. a FAPE when it exited her from special education based solely on her age, thus failing to provide her with the special education services she is entitled to through her twenty-second birthday. Yes.

3. Whether, as a matter of law, SSD failed to meet its burden to provide S.P. a FAPE, when SSD undisputably exited her from special education services solely based on age prior to her twenty-second birthday. Yes.
4. Whether this case should be remanded to the Office of Administrative Hearings to determine the appropriate remedy for the District's violations of the IDEA. Yes.

An addendum containing the complete text of 20 U.S.C. § 1412, 20 U.S.C. § 1413, and 20 U.S.C. § 1415, as well as the unpublished *M.R. v. Yelm School District,* 3:24-cv-05533-DGE (W.D. Wash. March 11, 2025) is included in this brief.

## IV. STATEMENT OF THE CASE

### Facts and Procedural History

The underlying facts of this case are not in dispute. S.P. was a student with significant disabilities, as defined in the IDEA, which

entitled her to special education and related services. *See* 3-ER-318. Between 2008 and June 2023, S.P. received special education services from SSD. *Id.* In June of 2023, SSD officially "exited" S.P. from special education based solely on her age; corresponding to the end of the school year in which she turned twenty-one. S.P. turned twenty-two years old in August of 2024. *Id.* Thus, she was prematurely exited almost 14 months prior to her twenty-second birthday, losing out on over a year of education.

Separately, S.P. remained enrolled at SSD as a result of a settlement agreement with SSD for unrelated past denials of FAPE through the end of the 2023-2024 school year. *Id.* However, those services were explicitly deemed "compensatory education," and did not satisfy the District's underlying obligation to provide S.P. FAPE until her twenty-second birthday. *Id.¸* see also 2-ER-234,-218, -219, -228.

S.P., by and through her parents/legal guardians, filed the underlying Due Process complaint on September 3, 2024, alleging that when SSD prematurely exited S.P. prior to her twenty-second birthday, the District denied her a FAPE. 2-ER-156. The parties cross-moved for summary judgment. 2-ER-160 and 2-ER- 273. The

Administrative Law Judge issued her Order on Cross Motions for Summary Judgment on January 13, 2025, granting the District's Motion and denying S.P.'s. 3-ER-317.

S.P. appealed that decision to the District Court for the Western District of Washington. *See* 3-ER-331**.** The parties cross-moved for summary judgment under the IDEA's administrative review standards, and the District Court entered its Order affirming the ALJ's decision on September 9, 2025. 1-ER-003

S.P. timely appealed that Order to this Court. 3-ER-328.

**_N.D. v. Reykdal_ Litigation**

Contemporaneously to the District's actions, a class action lawsuit against Washington's Office of Superintendent of Public Instruction challenging Washington's age out policy was proceeding in District Court and the Ninth Circuit. Out of that litigation came *N.D. v. Reykdal,* 102 F.4th 982 (9th Cir. 2024), and three substantive orders by the District Court. In that case, the Ninth Circuit ruled that because Washington provides free public education to students of all ages, "under *E.R.K.*, that makes section 1412(a)(1)(B)(i) inapplicable to Washington." *Reykdal,* 102 F.4th at 994. On remand, the District

Court issued two declaratory judgments. The first, issued on July 10, 2024[1], held in relevant part:

> c) Section 28A.155.020 of the Revised Code of Washington and Section 392.172A.02000 of the Washington Administrative Code are invalid as contrary to the IDEA to the extent they do not ensure eligible students receive a FAPE until they turn 22.

*N.D. v. Reykdal,* 2:22-cv-016121-LK, 2024 WL 3358743 *7 (W.D. Wash., July 10, 2024). On November 22, 2024, (while summary judgment in this matter was being briefed) the District Court granted preliminary approval of the settlement reached by the *Reykdal* parties. As part of that preliminary approval, the District Court issued a second declaratory judgment, holding:

> the state's policy of aging students out of special education at the end of the school year in which they turn 21 pursuant to Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(c) presently violates the IDEA, has violated the IDEA at all times during the two years preceding the filing of this lawsuit, and will continue to violate the IDEA absent a substantial change in the state's policies for charging and waiving tuition for its adult secondary education programs.

---

[1] Notably prior to the underlying Due Process being filed but after SSD had wrongfully exited S.P. 2-ER-156.

*N.D. v. Reykdal,* 2:22-cv-016121-LK, 2024 WL 4875055 *12 (W.D. Wash., November 22, 2024). That Order also set up a mechanism for class members to access compensatory education from their school district. *Id.* S.P. has not engaged in the class action process because this litigation was pending prior to the preliminary approval being granted and because "the proposal would not bind class members." *Id.* at *8.

On June 23, 2025 (while briefing in the District Court for this matter was occurring), the district court in *Reykdal* gave final approval to the settlement. As part of that ruling, the district court made clear "the Settlement Agreement is not binding on students, nor does it contain a release of claims. Students remain free to file their own class actions or individual lawsuits to remedy any violation of law that is not addressed by this Settlement Agreement." *N.D. v. Reykdal,* 2:22-cv-016121-LK, 2025 WL 1736639 *11 (W.D. Wash. June 23, 2025).

## V. STANDARD OF REVIEW

The standard of review as to all issues in this matter is de novo. This Court reviews matters of statutory interpretation de novo. *See United States v. Patrick,* --- F.4th ---- (9th Cir. 2025) 2025 WL 3692950

*2 ("We review questions of statutory interpretation de novo."). Issue number 1 is purely a matter of statutory interpretation – i.e., does the IDEA impose liability on LEAs for failing to comply with federal law. Likewise, the question of whether a school district provided a FAPE is reviewed de novo. *Croft v. Issaquah Sch. Dist. No. 411*, 22 F.4th 1048, 1053 (9th Cir. 2022). Therefore, de novo review is appropriate in this case.

Unlike other cases reviewing administrative action, in IDEA cases, the Ninth Circuit "do[es] not employ a highly deferential standard of review"; rather, it gives " 'due weight' to the state administrative proceedings." *Id.* (quoting *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 817 (9th Cir. 2007)). And it gives "particular deference to 'thorough and careful' administrative findings." *Id.* (quoting *R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007)). As argued below, no weight should be given to the ALJ's determinations because they were neither thorough nor careful. Appellant bears the burden of demonstrating that the ALJ's decision was incorrect. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010).

## VI. ARGUMENT ON APPEAL

The IDEA imposes an obligation on local educational agencies (LEAs), including SSD, to comply with the IDEA and basic principles of American jurisprudence require SSD to apply Washington law in a manner consistent with the IDEA. The statute, statutory and legislative history, and even Washington law affirms this view. No other court, until the court below, has ever held to the contrary.

First, the District Court erred in its statutory interpretation, finding that the IDEA does not impose an independent obligation on SSD to comply with the IDEA under 20 U.S.C. § 1413, and therefore that Defendant was not the appropriate party in this manner. Defendant is the appropriate party. Second, the Court erred in affirming the ALJ's decision, given that it is undisputed that S.P. did not receive a FAPE through her twenty-second birthday, in violation of the IDEA. Third, contrary to the ALJ's decision, as a matter of law SSD failed to meet its burden to show that it provided S.P. with a FAPE from June 2023 (when they exited her from special education) and August 2024 (her twenty-second birthday).

Thus, this Court should reverse the District Court's order

affirming the ALJ's decision, and remand this case to the Office of Administrative Hearings (OAH) for the ALJ to determine what remedies are appropriate for SSD's violations.

## 1. The District Court erred by interpreting the IDEA to conclude that SSD is not obligated to comply with federal law.

### a. Local Educational Agencies, such as SSD, that receive IDEA funding face liability for failing to comply with the IDEA.

The District Court erroneously found that SSD is not the proper defendant in this action because "the District was not responsible for independently determining whether it was required to comply with state laws and regulation." 1-ER-010. No other court has ever held that a Local Educational Agency is immune from liability based on a contradictory state policy because that interpretation is inherently contradicted with the IDEA's text, history, and purpose.

Appellants' argument proceeds from a very basic proposition; SSD had the responsibility of providing a FAPE to S.P. because she was a student with a disability residing in the District who had not yet reached her twenty-second birthday. *See Van Duyn,* 502 F.3d at 818. Because SSD "exited" S.P. from special education before the start of the 2023-2024 school year, it violated the IDEA by denying S.P. her

substantive right to a FAPE. The IDEA specifically provides a remedy to S.P. (and to all students) when they are denied FAPE - 20 U.S.C. § 1415(b)(6).[2]

20 U.S.C. § 1415(b)(6) provides that LEAs that receive federal funding are required to maintain policies and procedures that provide "an opportunity for any party to present a complaint – (a) with respect to *any matter* relating to the identification, evaluation, or educational placement of the child, or the *provision of a free appropriate public education to such child*." (emphasis added). 20 U.S.C. § 1415(f)(3)(E)(i) goes on to state that "a decision made by a hearing office shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education." Thus, explicitly under the IDEA, S.P. had the right to challenge the District's provision of a FAPE to her during the 2023-2024 school year and has the right to an administrative court making a substantive decision on whether SSD met its burden to provide S.P. with a free appropriate public education.

---

[2] That remedy exists separate and apart from any remedy available to S.P. under the *Reykdal* litigation, because "students remain free to file their own class actions or individual lawsuits to remedy any violation of law that is not addressed by this Settlement Agreement." *Reykdal,* 2025 WL 1736639 *11.

*See* Wash. Rev. Code § 28A.155.260(1) ("the school district has the burden of proof, including the burden of persuasion and production, whenever it is a party to a due process hearing regarding the identification, evaluation, reevaluation, classification, educational placement, disciplinary action, or provision of a free appropriate public education for a student with a disability."). S.P. appropriately raised issues regarding SSD's violation of a "any matter" regarding the "provision of a free appropriate public education," given that she did not receive the FAPE she was entitled to during the 2023-2024 school year. Because 20 U.S.C. § 1415 makes the District an appropriate party, District Court's decision should be reversed and this matter remanded to the District Court with direction to remand to OAH for consideration of the appropriate remedy.

In finding otherwise, the District Court held the Defendant was not an appropriate party because "Courts thus consider the specific facts of a case in light of the statutory language in determining state and local educational agencies liability under the IDEA" citing *Kalliope R. ex rel. Irene D. v. N.Y. State Dep't of Educ.*, 827 F. Supp. 2d 130, 141 n.3 (E.D.N.Y. 2010). 1-ER-009. This interpretation is at best half correct.

True, Courts do look to the specific facts to determine in which scenarios the state educational agency can be held liable. But none of the cases cited in that footnote found that the Local Educational Agency was not an appropriate party to the litigation. *Kalliope R.,* 827 F. Supp. 2d 130.

As an example, in *Jose P. v. Ambach,* 669 F.2d 865, 867 (2nd Cir. 1982), one of the cases in *Kalliope*'s footnote, the Second Circuit affirmed a lower court's decision which found that both the LEA (the City of New York), and the SEA (the State of New York/Commissioner of Education) were liable because they "had violat(ed) the requirements of federal and New York law and regulations." *Id.* As the Court explained, "thus Judge Nickerson correctly concluded that while the 'primary responsibility' was the City's, the 'Commissioner… also bears a share of the responsibility (because of) (h)is failure to enforce federal and state laws…'" *Id.* 870-70 (alterations in original) (applying the IDEA's predecessor statute). In fact, the Second Circuit *affirmed* the District Court's determination that the City was 80% legally responsible for the violation given the State's limited responsibility to supervise "educational opportunities." *Id.* at 871. The District Court's ruling stands in direct contrast to *Jose P.*, as it determined that SSD as an

LEA bears no liability, while the Second Circuit found the LEA to be substantially liable.

The same is true for another case relied on by the District Court, *Corey H. v. Bd. of Educ. of City of Chicago,* 995 F. Supp. 900 (N.D. Ill.1998). The District Court relied on one line of text, "[C]ourts have found that the state educational agency is responsible for a local school district's systematic failure to comply with an IDEA mandate," for the proposition that the District is not liable in this case. 1-ER-009. But all that text means is that the State and/or the SEA are not immune from liability. In fact, the District Court below ignored the procedural posture the court in *Corey H.* found itself in. The very first line of that decision frames the issues well:

> Children with disabilities in the Chicago public schools have been and continue to be segregated into separate and unequal educational environments, contrary to established federal law. **Although the local school district has recognized its deficiencies and agreed to a remedial plan**, the State educational agency has continued to deny its responsibility.

Thus the issue addressed by the district court in *Corey H.*, like the Second Circuit in *Jose P.,* was whether the *state* educational agency could also liable under the IDEA, in addition to liability from the local

educational agency.

The remaining cases likewise answer the question of whether the state educational agency can be liable under the IDEA. They say nothing about LEA liability. This is clear from the language used in the decisions. *See e.g. Fetto v. Sergi,* 181 F. Supp. 2d 53, 72 (D. Conn. 2001) ("The state education agency is a proper party to actions involving claims of systemic violations of the IDEA… It is also an appropriate defendant when the plaintiff makes a claim that the defendants violated 42 U.S.C. § 1412")(emphasis added); *Quatroche v. E. Lyme Bd. of Educ.*, 604 F. Supp. 2d 403, 412 (D. Conn. 2009) ("The state education agency is a proper party to actions involving claims of systemic violations of the IDEA, as the state defendants acknowledge")(emphasis added). Thus, the cases cited in *Kalliope R.* tell us what we already know, states *can* be appropriate parties in IDEA cases involving systemic issues. But the fact that they can be, does not mean they are the *only* appropriate parties, as illustrated by the courts' repeated use of the indefinite "a/an" versus the definite "the" when describing them as appropriate parties.

Both *Jose P.* and *Corey H.* directly support the proposition that LEA's can be liable for violating the federal mandates of the IDEA. The District

Courted erred in finding otherwise. As this was the sole reason the District Court affirmed the ALJ's decision, this Court should reverse and remand to OAH for an appropriate remedy under the IDEA as detailed below.

**b. 20 U.S.C. § 1413 does not relieve Seattle Public Schools from its obligation to comply with federal law.**

**i. The plain language of 20 U.S.C. § 1413 does not limit liability for violating the IDEA.**

The District Court further erred by interpreting 20 U.S.C. § 1413 to mean that LEAs can only be liable for violating state policies and procedures, not their federal equivalents. *See generally* 1-ER-008 ("the Act did not impose on the District an independent obligation… to interpret and apply Washington law in a manner consistent with the IDEA."). This interpretation is not compelled by the plain language of § 1413, and is in fact explicitly rejected by the legislative and statutory history. In relevant part, 20 U.S.C. § 1413 reads:

> (a) In general
>
> A local educational agency is eligible for assistance under this subchapter for a fiscal year if such agency submits a plan that provides assurances to the State educational agency that the local educational agency meets each of the following conditions:
>
> (1) Consistency with State policies

> The local educational agency, in providing for the education of children with disabilities within its jurisdiction, has in effect policies, procedures, and programs that are consistent with the State policies and procedures established under section 1412 of this title.

20 U.S.C. § 1413(a).

On its face, § 1413 does not foreclose District liability for violating the underlying provisions of § 1412. One would expect Congress to state something to that effect clearly. This statute details what is necessary for the LEA to prove it "is eligible for assistance under this subchapter for a fiscal year," and imposes an additional obligation on the LEA – having policies and procedures that comply with State policies and procedures – as part of that eligibility. This additional level of obligation does not, on its face, mean districts are immune from liability for violating the actual provisions of § 1412. Instead, it is consistent with prior decisions of this Court that when State policies and procedures provide more protection to the students, LEAs are obligated to comply with those broader protections. *See, e.g., Union School Dist. v. Smith,* 15 F.3d 1519, 1527 (9th Cir. 1994).

But to read § 1413 so narrowly as the District Court did, this

Court would have to ignore the IDEA's broader provisions. Consider the procedural safeguards contained in § 1415(b)(6), which allows Parents to file for due process against school districts regarding "*any matter* relating to… the provision of a free appropriate public education to such child." By extending the right to due process against an LEA to "any matter" regarding the provision of a FAPE, Congress plainly envisioned compliance with all aspects of the IDEA i.e. "any matter." § 1415 was not limited to "LEA eligibility requirements under § 1413." A reading that better harmonizes 20 U.S.C. §§ 1412, 1413(a) and 1415 requires LEAs to comply with both the underlying "policies and procedures" of § 1412 and the policies and procedures adopted by the SEA.

This interpretation is far more consistent with how typical spending clause legislation is interpreted. *See Arlington Cent. School Dist. Bod. Of Educ. v. Murphy,* 548 U.S.C. 291, 296 (2006) ([L]egislation enacted pursuant to the spending power is much in the nature of a contract, and therefore, to be bound by federally imposed conditions, recipients of federal funds must accept them voluntarily and knowingly) (cleaned up). Congress has unambiguously subjected LEAs who receive federal assistance under the IDEA to liability regarding "any matter

relating to… the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). "Any matter" necessarily includes whether S.P. was entitled to receive a FAPE as a twenty-one-year-old. *Id*.

The District Court's holding that a contrary reading would produce "absurd results" (*see* 1-ER-008) ignores Ninth Circuit precedent, along with decisions from other Courts of Appeals, already requiring LEAs to comply with the relevant federal law over conflicting state law. For example, in *Doe by Gonzales v. Maher,* 793 F.2d 1470, 1486 (9th Cir. 1986) *aff'd in relevant part by Honig v. Doe,* 484 U.S. 305 (1988), the Ninth Circuit ruled that a state statute allowing indefinite suspension or expulsion of disabled students during administrative proceedings "is in conflict with federal law" and therefore violates stay-put. *See also Hacienda La Puente Unified School Dist. of Los Angeles v. Honig,* 976 F.2d 487, 493 (9th Cir. 1992) (rejecting the district's interpretation of a statute that would render it "inconsistent with federal statutory and regulatory law.").

As another example, the Third Circuit, in an unpublished opinion, held that a Pennsylvania law mandating schools disenroll students after

ten consecutive absences "[is] preempted by IDEA's stay-put provision". *R.B. v. Mastery Charter School,* 532 Fed. Appx. 136, 142 (3rd Cir. 2013), *cert, denied* 571 U.S. 1230 (2014). *R.B.* is particularly analogous because it presents the same type of conflict as is present here – state law requiring one thing, and federal law requiring the opposite. *Id.* But the Third Circuit had no difficulty holding that the charter school was required to ignore the state law in order to implement the federal law. As all three of those cases illustrate, basic preemption requirements (discussed in greater detail, *infra*, at 36) already require LEAs to comply with federal law when state law conflicts, thus necessarily requiring LEAs to determine whether their conduct comports with federal law. The District Court's holding also overlooks the reality on the ground, which is that school districts are required to interpret the IDEA every day of the week either in IEP meetings or when making a whole host of determinations regarding placement, funding, and services.

But leaving parents and students powerless to challenge district action pursuant to § 1415(b)(6), and instead forcing them to proceed against the State, ignores an even more absurd result – Districts having

free reign to ignore the provisions of the IDEA so long as it is not directly contradicted by State policies. It also removes any obligation of school districts to hold state's accountable to the IDEA and puts the entire onus on parents and children to enforce their rights. That cannot be, and is not, the world Congress envisioned when it implemented the IDEA and granted parents the right to challenge District action through due process.

ii. The statutory and legislative history of 20 U.S.C. § 1413(a)(1) explicitly rejects the District Court's interpretation.

Appellant's proposed interpretation of 20 U.S.C. § 1413 is fully supported by the relevant statutory and legislative history, which unequivocally confirms that Congress fully intended for the LEAs to comply with *all* portions of the IDEA. When Congress initially passed the Education for All Handicapped Children Act of 1975 ("EHA"), what is now contained in 20 U.S.C. § 1413(a)(1) existed as 20 U.S.C. § 1414(a)(6) (1976). *See PL 94-142,* November 29, 1975, 89 Stat 773. In relevant part, then 20 U.S.C. § 1414(a)(6) (1976) stated:

> (a) a local educational agency… which desires to receive payments… shall submit an application to the appropriate State educational agency. Such application shall –

…

> (6) provide satisfactory assurance that policies and programs established and administered by the local educational agency or intermediate educational unit **shall be consistent with the provisions of paragraph (1) through paragraph (7) of section 1412 and section 1413(a)[3].**

20 U.S.C. § 1414(a)(6) (1976) (emphasis added). Of relevance here, 20 U.S.C. § 1412 (1976), contained the (slightly amended) language at issue in this case, "a free appropriate public education will be available for all handicapped children between the ages of three and eighteen within the State…" 20 U.S.C. 1412(2)(B) (1976). Thus from the very beginning of the EHA/IDEA, the obligation imposed on LEAs is compliance with the underlying obligations of section 1412 and section 1413(a), not just the state policies themselves.

The IDEA was then substantially amended in 1997. *See PL 105-17,* June 4, 1997, 111 Stat 37. The language previously contained in §

[3] In the Congressional Bill, Section 1412 and Section 1413 were numbered 612 and 613 respectively. This numbering remained consistent through the multiple versions of the IDEA and appears as such in the House and Senate Reports discussed below.

1414(a)(6) (1976) was then recodified to where it currently exists, 20 U.S.C. § 1413, and read in relevant part "the local educational agency… has in effect policies, procedures, and programs that are consistent with the State policies and procedures established under section 1412 of this title." 20 U.S.C. § 1413(a)(1) (1997). But in explaining that change, the House Education Committee stated the following:

> Section [1413] consolidates LEA eligibility requirements, which if met, make an LEA eligible for part B[4] funding. The Committee believes that these amendments will promote a better understanding of and more consistent **compliance with part B of the IDEA**.
>
> In Section [1413], the following provisions are **retained without substantive alteration**: conditions associated with notice of LEA or State agency ineligibility; **compliance with part B of the IDEA and State requirements associated with it**: …

H.R. Rep. 105-95 at 92-93 (emphasis added). Thus, the Committee not only explicitly confirmed "compliance with part B of the IDEA" (which includes 20 U.S.C. § 1412) was an obligation of the LEAs, but it also explicitly intended for that obligation to be "retained without

[4] "Part B" of the IDEA refers to 20 U.S.C. § 1411 through § 1419, "Assistance for Education of All Children with Disabilities."

substantive alteration" when the nearly identical language now codified at 20 U.S.C. § 1413 was introduced.

The IDEA, including 20 U.S.C. § 1413, was then reauthorized in 2004. In a 2003 House Report, the Education Committee again commented on Section 1413, stating:

> the bill includes language allowing local educational agencies to reasonably demonstrate to the State that they have in effect policies and procedures **to ensure compliance with the Act**. The Committee does not intend this to imply that the local educational agencies do need to implement effective policies or procedures under the Act, **nor is the language intended to provide a rationalization to local education agencies for failure to effectively implement the Act**.

H.R. Rep. 108-77 at 100 (bolded added). Again, the Committee fully intended for LEAs to comply with "the Act," and to effectively implement "the Act" – not just the State policies and procedures developed as part of the Act.

**iii. The District Court's interpretation of 20 U.S.C. § 1413(a)(1) is inconsistent with how the federal courts have interpreted the EHA/IDEA from its creation.**

The District Court's reading of § 1413 is inconsistent with how courts have read the EHA/IDEA from the beginning. Courts routinely

and without issue treat state and LEA obligations to provide FAPE as identical, as was the case in the Supreme Court's seminal *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley*, 458 U.S. 176, 183 (1982) ("In addition to the state plan and the IEP already describe, the Act imposes extensive procedural requirements upon States receiving federal funds under its provisions…" "Compliance is assured by provisions permitting the withholding of federal funds upon determination that a participating state or **local agency has failed to satisfy the requirements of the Act.**") (bolded added). Similarly, in *R.L. v. Miami-Dade County School Bd.,* 757 F.3d 1173, 1177 n. 1 (11th Cir. 2014), the Eleventh Circuit specifically blended "state" and "LEA" requirements, writing "the responsibility for the on-the-ground work for individual students generally falls on local educational agencies like the Miami–Dade County School Board here. See 20 U.S.C. §§ 1401(19)(A), 1413. In this opinion, we use the term 'state' to refer to the agency charged with providing a child's education." As is also common, courts frequently combine the requirements of 20 U.S.C. §§ 1412 and 1413. In *East Ramapo Cent. School District v. DeLorenzo,* 13-CV-1613, 2013 WL

5508392 (S.D.N.Y. October 3, 2013), the district court held "LEAs that wish to receive IDEA funds must demonstrate to the satisfaction of the state agency that their practices with respect to education of students with disabilities **meet state and federal standards**. See 20 U.S.C. §§ 1412–13." *Id.* at *2

The blending of State and LEA requirements to provide a FAPE is also consistent with Washington state law, which treats school districts as only "quasi-municipal" corporations, that is "they are mere arms of the state for the administration of its school system." *Bellevue School Dist. No. 405 v. Brazier Const. Co.,* 100 Wash.2d 776, 779, 675 P.2d 232 (Wash 1984).

Because the statutory and legislative history and judicial interpretation of the EHA/IDEA make clear that LEAs like SSD are equally required to comply with federal law as they are to state law, the District's failure in this case subjects them to liability under the IDEA.

**c. Washington's "State policies and procedures established under Section 1412" also requires LEAs to comply with federal law.**

Even if this Court were to hold that school districts need only comply with state policies and procedures as a general rule under §

1413, SSD is still an appropriate party in this case because Washington's policies and procedures established pursuant to § 1412 undisputably and explicitly require school districts and other LEAs to have policies and procedures that are consistent with federal law. *See* Wash. Admin. Code 392.172A.06000(1)(a).

Wash. Admin. Code 392.172A.06000(1)(a) requires "a school district or other public agency" to submit a plan to the Office of Superintendent of Public Instruction, providing assurances that "the school district or other public agency meets the conditions contained in 34 C.F.R. 300.201 through 300.213 relating to: (a) Development of policies and procedures consistent with this chapter and **Part B of the act**." (emphasis added). Thus, Washington requires LEAs to have policies "consistent with" with Part B of the IDEA. As a result, § 1412(a)(1)(A), which mandates special education services until age twenty-two, applies to the LEAs both as a matter of federal law as discussed above, and as a matter of state law under Wash. Admin. Code 392.172A.06000(1)(a). The District failed to follow both state and federal law, making it a proper party to this case.

**2. S.P., as an SSD student with disabilities in Washington, was guaranteed under the IDEA a substantive right to special education and related services until her twenty-second**

**birthday.**

**a. The IDEA guarantees a FAPE to students until their twenty-second birthday in Washington.**

The District Court erred in affirming the ALJ's decisions finding that, as a matter of law, SSD did not deny S.P. a FAPE, when in fact the opposite is true.

The primary purpose of the IDEA, 20 U.S.C. § 1400 *et seq,* is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). In enacting the IDEA, Congress found that "[i]mproving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." 20 U.S.C. §1400(a)(1).

The IDEA "is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992).

The IDEA conditions the receipt of that financial assistance on the states' and local educational agencies' maintenance of policies and procedures that ensure a FAPE is available to all children with disabilities residing in the state between the ages of three and twenty-one, "inclusive" (*i.e.*, until their twenty-second birthdays). 20 U.S.C. § 1412(a)(1)(A); 20 U.S.C. § 1413; *E.R.K.,* 728 F.3d at 986 ("a student's eligibility for IDEA services ordinarily ends on his twenty-second birthday").

The IDEA does allow for an exception to the general rule that disabled students be educated until their twenty-second birthday if it would be "inconsistent with State law or practice" to provide public education to students 18 to 21:

> The obligation to make a [FAPE] available to all children with disabilities does not apply with respect to children—
>
> (i) Aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges
>
> …

20 U.S.C. § 1412(a)(1)(B). More than a decade ago, this Court held, "we

interpret 1412(a)(1)(B)(i) to mean that [states] cannot deny special education to disabled students aged 18 through 21 if in fact it provides 'free public education' to nondisabled students in that range of ages." *E.R.K.,* 728 F.3d at 987. "By passing the IDEA, Congress intended to open the door of public education to all qualified children. If [states] wish to shut the door to students once they turn 20, that is their prerogative—but they must shut them to *all* students, regardless of disability." *E.R.K,* 128 F.3d at 992 (cleaned up) (original emphasis).

Prior to *Reykdal,* 102 F.4th 982, "Washington d[id] not shut the door to free public education to all 21-year-olds – only disabled ones." *Id.* at 994. That is because "tens of thousands of Washington students participate in the High School+ and GED programs at zero cost—receiving 'free' education under any definition of that word—because they have been granted waivers of the $25 tuition fee." *Id.* "In the 2021–22 school year, for example, 24,332 students participating in High School+, GED, and other similar programs received a waiver." *Id.* As such, "under *E.R.K.*, that makes section 1412(a)(1)(B)(i) inapplicable to Washington." *Id.*

Therefore, under both *E.R.K.* and *Reykdal,* S.P., as a Washington

student receiving special education services and not subject to the other exceptions, S.P. has a substantive right to special education and related services until her twenty-second birthday since at least the 2021-2022 school year (*i.e.,* the year cited in *Reykdal*), which encompasses the relevant time period. 3-ER-320.

**b. By failing to develop an IEP reasonably calculated to provide S.P. a FAPE until her twenty-second birthday, SSD, as a matter of law, violated the IDEA.**

SSD is liable for S.P. missing out on an entire year of special education because it failed to develop and implement an IEP designed to provide her a FAPE during the 2023-2024 school year. "One of the IDEA's most important mechanisms for achieving these lofty goals is the formulation and implementation of IEPs. Under § 1414 (d), every disabled child must have an IEP drafted and put into effect by the local educational authority." *Van Duyn,* 502 F.3d at 818.

The District had the burden at the administrative level to show that it provided S.P. with a FAPE. *See* Wash. Rev. Code § 28A.155.260(1). There is no evidence in the record that supports a finding that the District provided S.P. with an IEP pursuant to SSD's obligations under § 1414(d) after June 2023. Thus, S.P. did not have

special education services that she was entitled to from SSD through her twenty-second birthday in August 2024. The IEP for the 2023-2024 school year was undisputedly not an IEP developed pursuant to § 1414(d). Instead, as that document makes clear, the services provided “an extra year as a result of Compensatory Services” because of a settlement agreement reached between the parties. *See e.g.* 2-ER-234,-218, -219, -228. The settlement agreement makes that arrangement clear; “the District will provide compensatory education to Student in the form of an additional year of transition programming for the 2023-2024 school year.” 2-ER-185. The provision of “compensatory education” does not relieve the District of its underlying FAPE obligation. That is because the very purpose of each differs.

As the Supreme Court has made clear “to meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.” *Endrew F., v. Douglas County School Dist. RE-1*, 580 U.S. 386, 399 (2017). Thus, the provision of FAPE is about progress – it is about looking forward “in light of the child’s circumstances.” *Id.* Compensatory education serves an entirely different goal: It “refers to

an award of services to compensate for a past deficient program." *M.G. by Priscilla G. v. Yakima Sch. Dist. No. 7*, 24 Wash. App. 2d 703, 721, 524 P.3d 670, 680 (Wash. Ct. App. 2022), *aff'd*, 2 Wash. 3d 786, 544 P.3d 460 (2024). Or, phrased another way, "to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 524 (D.C. Cir. 2005) *cited with approval in R.P. v. Prescott Unif'd Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011). Compensatory education is thus a rear-facing relief designed to remedy past failures to serve – not to serve as replacement for future obligations.

The District has never challenged this distinction nor argued that it did not in fact did provide a FAPE to S.P. during the 2023-2024 school year. There is no evidence in the record that S.P. received a genuine IEP or FAPE during this period, because she did not. It undisputed as a matter of law that the District failed to meet its obligations under the IDEA to develop and implement an IEP reasonably calculated to provide S.P. a FAPE. Consequently, S.P. was deprived of the educational benefits she was entitled to as a resident and student with a

disability, and the District's failure to act triggers the remedies provided by federal law. This Court should reverse the District Court's order affirming the ALJ decision and remand this case back to OAH to determine the appropriate remedies.

### 3. SSD's other argument, that Wash. Rev. Code § 28A.155.020 was in effect at the time S.P. was exited from special education, should be rejected.

In the administrative hearing, the District's primary argument was that the prior version of Wash. Rev. Code § 28A.155.020 only required services until the end of the school year in which a student turns twenty-one, as it was "in effect at the time" S.P. was exited. 3-ER-316. Thus, SSD argued, it cannot be held liable for violating federal law because it complied with that state law. That argument fails for two fundamental reasons – (1) conflict preemption means the state law must fall, and (2) because the outcome of *Reykdal* must be applied retroactively.

#### a. The Conflict Preemption Doctrine requires compliance with federal law when in conflict with state law, especially in the IDEA context.

During the administrative process, SSD's primary argument was that Wash. Rev. Code § 28A.155.020 was "in effect" at the time, thus

controlling the District's action. This argument should be rejected. Instead, this Court, applying conflict preemption principles, should do what courts around the country have done – determine that a conflict exists between federal and state law, confirm that federal law preempts state law, and hold the District accountable for violating that federal law. It is black letter law that "that state laws that conflict with federal law are 'without effect.'" *Mutual Pharmaceutical Co., Inc. v. Bartlett*, 570 U.S. 472, 480 (2012) (citing *Maryland v. Louisiana*, 451 U.S. 725 (1981) and *McCulloch v. Maryland*, 4 Wheat. 427 (1819)). The law of preemption flows from the Constitutional directive that the laws of the United States are the "supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "Of course, a state statute is void to the extent it conflicts with a federal statute—if, for example, compliance with both federal and state regulations is a physical impossibility." *Maryland*, 451 U.S. at 747.

The Ninth Circuit has already applied conflict preemption to the IDEA. As noted above, in *Doe by Gonzales,* 793 F.2d at 1486, the Ninth Circuit ruled that a state statute allowing indefinite suspension or

expulsion of disabled students during administrative proceedings "is in conflict with federal law" and therefore violates stay-put. This Court did so again in *Hacienda La Puente Unified School Dist. of Los Angeles,* 976 F.2d at 93 when it rejected an interpretation proposed by the school district that would render the state statute "inconsistent with federal statutory and regulatory law."

Recently, the Western District of Washington also applied conflict preemption to an IDEA case. In *M.R. v. Yelm School District,* 3:24-cv-05533 (W.D. Wash. March 11, 2025)(unpublished and included in the addendum), the district court found a Washington statute (Wash. Rev. Code § 28A.225.230(3)) was "clearly preempted," "insofar" as it "prevents a student from advancing the federal claim that school rescinded a transfer in a way that violated the IDEA." In essence, Wash. Rev. Code § 28A.225.230(3) required students to comply with a specific appeal process in order to challenge non-resident district transfers ("interdistrict transfers"). M.R. was a student with disabilities attending the Yelm School District under an interdistrict transfer. *Id.* at 10. After a series of behavioral violations, Yelm School District revoked M.R.'s interdistrict transfer, requiring him to return

to his home school district. *Id.* at *13. M.R.'s family failed to utilize the state appeal process required under Wash. Rev. Code § 28A.225.230(3), instead opting to file for due process under the IDEA, alleging M.R.'s placement was unilaterally changed in violation of the IDEA. *Id.* at *16 and 24. The Administrative Law Judge determined that because M.R.'s parents did not appeal the revocation under Wash. Rev. Code § 28A.225.230(3), the revocation notice "must be accepted as effective and appropriate" and therefore the ALJ concluded that she did not have jurisdiction to determine whether the revocation was appropriate under the IDEA. *Id.* The district court disagreed. "Whether the unilateral revocation of Plaintiff's transfer constituted a change of placement for the purposes of the IDEA is a federal question. And to the extent that a state passes legislation that provides a loophole around procedural requirements of the IDEA under certain factual circumstances, that law is preempted where it conflicts with the IDEA." *Id.* at 31.

The same should have been found here. The prior version of Wash. Rev. Code § 28A.155.020, which cut off eligibility at the end of the school year in which the student turned twenty-one, stood in direct

conflict with 20 U.S.C. § 1412(a)(1)(A), which guarantees a FAPE "to all children with disabilities residing in the State between the age of 3 and 21, inclusive." Here, where compliance with both state and federal law is impossible – where a district cannot simultaneously exit a student at the end of the school year in which they turn twenty-one *and* on their twenty-second birthday, the state law must yield. It is simply not a response to say the District was bound by state law and could choose to implement that over the *more protective federal law* – it could not. Conflicting state laws are "without effect." *Bartlett*, 570 U.S. at 480. Just as it was no excuse that the charter school had conflicting obligations under state and federal law in *R.B.,* 532 Fed. Appx. 136, nor was it an excuse that the Yelm School District complied with state law in revoking M.R.'s enrollment, SSD cannot be excused from failing to comply with federal law that directly conflicted with the state law it chose to comply with.

Accordingly, SSD was at all times required *by federal law* to provide FAPE until S.P.'s twenty-second birthday. Its failure to do so violated the IDEA.

**b. Lower Courts are required to give retroactive effect to**

**binding Court of Appeals decisions.**

The Administrative Law Judge ruled that S.P. failed to demonstrate *N.D.* applied retroactively to school districts. 3-ER-323. But again, it is black letter law that judicial decisions apply retroactively. "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively is familiar to every law student." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312 (1994). "Judicial decisions have had retrospective operation for near a thousand years." *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372 (1910)(Holmes, J., dissenting). As the Supreme Court explained, "when this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." *Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 97 (1993). Retroactivity applies to judicial decisions because "a judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Exp., Inc.*, 511 U.S. at

312-13. As this Court has explained, “the theory of judicial interpretation of a statute is that the interpretation gives the meaning of the statute from its inception, and does not merely give an interpretation to be used from the date of the decision.” *U.S. v. City of Tacoma, Wash.,* 332 F.3d 574, 580 (9th Cir. 2003).

Thus, the contours of 20 U.S.C. § 1412(a)(1)(B)(i) as they are defined and explained in *Reykdal* – that is, in states where there is available free public education, disabled students are guaranteed a FAPE until their twenty-second birthday – is and has always been the law. *Reykdal,* 102 F.4th at 994. And therefore, the District's failure to comply with that obligation in June 2023 is no different than any prospective failure to comply. Because that is what the law has always required.

Thus, neither primary argument advanced by the SSD merits affirming either the District Court or the Administrative Law Judge.

## VII. CONCLUSION

For the foregoing reasons, the Court should reverse the district court's statutory interpretation and erroneous affirmation of the ALJ's decision. We ask that the Court remand this matter to the District Court

with direction to remand to the Office of Administrative Hearings to determine the appropriate remedy for the SSD's violation of the IDEA.

RESPECTFULLY SUBMITTED this 16th Day of January, 2026.

_/s/Alex Hagel_________________
Alex Hagel
Lara Hruska
CEDAR LAW LLP
600 1st Ave., Ste 330,
PMB 96563,
Seattle, WA 98104-2246
alex@cedarlawllp.com
Telephone: 206-607-8277

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the requirements of Circuit Rule 32. The brief is proportionately spaced in 14-point type. According to the word processing system used to prepare the brief, the word count of the brief is 8338, not including the corporate disclosure statement, table of contents, table of citations, certificate of service, certificate of compliance, statement of related cases, and any addendum containing statutes, rules or regulations required for consideration of the brief.

DATED this 16th day of January, 2026.

*/s/ Alex Hagel*
Alex Hagel
*Attorney for Appellants*

## STATEMENT OF RELATED CASES

Appellees are not aware of any cases related to the present appeal that are currently pending before this Court.

DATED this 16th day of January, 2026.

*/s/ Alex Hagel*
Alex Hagel
*Attorney for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the 9th Circuit E-Filer Portal.

Participants in the case who are registered CM/ECF users will be served by the 9th Circuit E-Filer Portal.

Date: 16th of January, 2026 */s/ Alex Hagel*

*Attorney for Appellants*