No. 25-6624

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

S.P., by and through her guardians C.P. and D.P.,

Plaintiffs-Appellants,

v.

Seattle Public Schools,

Defendant-Appellee.

---

On Appeal from the United States District Court
for the Western District of Washington,
No. 2:25-cv-00286
Honorable Barbara J. Rothstein

---

# APPELLEE'S ANSWERING BRIEF

---

Sarah C. Johnson, WSBA #34529
Susan B. Winkelman, WSBA #45955
PACIFICA LAW GROUP LLP
401 Union Street, Suite 1600
Seattle, WA 98101-2668
Telephone: 206-240-1700
*Attorneys for Appellee Seattle Public Schools*

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. JURISDICTIONAL STATEMENT ..... 3

III. STATUTORY AUTHORITIES ..... 4

IV. COUNTERSTATEMENT OF ISSUES ..... 5

V. STATEMENT OF THE CASE ..... 5

A. S.P.'s Educational Services within the District ..... 5

B. The *N.D. v. Reykdal* Litigation ..... 6

C. The *N.D.* Settlement ..... 8

D. Appellants' Administrative Action and the ALJ's Decision ..... 11

E. The District Court's Decision ..... 14

VI. SUMMARY OF THE ARGUMENT ..... 15

VII. STANDARD OF REVIEW ..... 17

VIII. ARGUMENT ..... 17

A. The IDEA Defines the Responsibilities of States and Local Educational Agencies and Applies Different Requirements to Each. ..... 17

B. The District Court Correctly Determined that the District was not Legally Responsible for the State's Violation of the IDEA, and Appellants' Arguments to the Contrary are without Merit. ..... 21

1. The District Complied with Federal Law when it Exited S.P. from Services at Age 21 ..... 22

2. Appellants' Attempts to Rewrite the District's Obligations under Section 1413 are Unavailing. ....28

a. The Plain Language of Sections 1412 and 1413 do not Support Appellants' Proposed Interpretation of the IDEA's Requirements. ....28

b. To the Extent Relevant, the Statutory and Legislative History of Section 1413 Supports the District's Arguments. ....35

c. Appellants' Contention that Courts Treat State and LEA FAPE Obligations as Identical is Meritless. ....39

3. Washington's IDEA Regulations Contain the Same State and LEA Responsibilities Set Forth in the IDEA. ....41

C. The District Properly Complied with State Law When it Exited S.P. from Special Education Services at the End of the School Year in which She Turned 21. ....43

1. The Preemption Doctrine is Inapplicable. ....45

2. Appellants' Retroactivity Argument is without Basis. ....48

IX. CONCLUSION ....49

## TABLE OF AUTHORITIES

### Federal Cases

*A.R. v. Connecticut State Bd. of Educ.*,
5 F.4th 155 (2d Cir. 2021) ....................23

*Andrews v. Ledbetter*,
880 F.2d 1287 (11th Cir. 1989) ....................35

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
548 U.S. 291 (2006).................... 28, 31

*Avila v. Spokane Sch. Dist. 81*,
852 F.3d 936 (9th Cir. 2017) ....................35

*Board of Education v. Rowley*
458 U.S. 176 (1982)....................39

*Cleveland v. City of Los Angeles*,
420 F.3d 981 (9th Cir. 2005) .................... 28, 29

*Cnty. of Westchester v. New York*,
286 F.3d 150 (2d Cir. 2002)....................35

*Corey H. v. Board of Educ. of City of Chicago*,
995 F. Supp. 900 (N.D. Ill. 1998).................... 25, 26

*Crofts v. Issaquah Sch. Dist. No. 411*,
22 F.4th 1048 (9th Cir. 2022) ....................17

*D.O. By & Through Walker v. Escondido Union Sch. Dist.*,
59 F.4th 394 (9th Cir. 2023) ....................17

*Doe by Gonzales v. Maher*,
793 F.2d 1470 (9th Cir. 1986) .................... 32, 46

*E. Ramapo Cent. Sch. Dist. v. DeLorenzo*,
No. 13-CV-1613 CS, 2013 WL 5508392 (S.D.N.Y. Oct. 3, 2013)....................40

*E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*,
728 F.3d 982 (9th Cir. 2013) ....................7, 23

*Engleson v. Burlington N. R. Co.*,
972 F.2d 1038 (9th Cir. 1992) ....................................................................17

*Fairfield-Suisun Unified Sch. Dist. v. California Dep't of Educ.*,
780 F.3d 968 (9th Cir. 2015) ......................................................................35

*Fetto v. Sergi*,
181 F. Supp. 2d 53 (D. Conn. 2001)............................................................26

*Foster v. Carson*,
347 F.3d 742 (9th Cir. 2003) ......................................................................46

*Hacienda La Puente Unified Sch. Dist. of Los Angeles v. Honig*,
976 F.2d 487 (9th Cir. 1992) ......................................................................32

*Jose P. v. Ambach*
669 F.2d 865 (2d Cir. 1982).........................................................................24

*J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*,
626 F.3d 431 (9th Cir. 2010) ......................................................................17

*K.L. v. Rhode Island Bd. of Educ.*,
907 F.3d 639 (1st Cir. 2018).......................................................................23

*K.O. by & through J.O. v. Jett*,
No. 21-CV-1837, 2023 WL 5515981 (D. Minn. Aug. 25, 2023)........................23

*Kalliope R. ex rel. Irene D. v. New York State Dep't of Educ.*,
827 F. Supp. 2d 130 (E.D.N.Y. 2010) ..........................................................24

*Lake Washington Sch. Dist. v. Off. of Superintendent of Pub. Instruction*,
634 F.3d 1065 (9th Cir. 2011) ....................................................................34

*N.B. v. Hellgate Elementary Sch. Dist.*,
541 F.3d 1202 (9th Cir. 2008) ....................................................................17

*N.D. v. Reykdal*,
102 F.4th 982 (9th Cir. 2024) ............................................................. passim

*N.D. v. Reykdal*,
No. 2:22-CV-01621-LK, 2023 WL 5632783 (W.D. Wash. Aug. 31, 2023).....6, 7

*N.D. v. Reykdal*,
No. 2:22-CV-01621-LK, 2024 WL 3358743 (W.D. Wash. July 10, 2024) ........ 7, 8, 48

*N.D. v. Reykdal*,
No. 2:22-CV-01621-LK, 2024 WL 4008571 (W.D. Wash. Aug. 30, 2024) ........ 8, 12

*N.D. v. Reykdal*,
No. 2:22-CV-01621-LK, 2024 WL 4875055 (W.D. Wash. Nov. 22, 2024) ........ passim

*N.D. v. Reykdal*,
No. 2:22-CV-01621-LK, 2025 WL 1736639 (W.D. Wash. June 23, 2025) ........ 10, 11

*Quatroche v. East Lyme Bd. of Educ.*,
604 F. Supp. 2d 403 (D. Conn. 2009) ........ 26

*R.B. v. Mastery Charter Sch.*,
532 F. App'x 136 (3d Cir. 2013) ........ 32

*R.L. v. Miami-Dade Cnty. Sch. Bd.*,
757 F.3d 1173 (11th Cir. 2014) ........ 40

*U.S. v. Hilger*,
867 F.2d 566 (9th Cir. 1989) ........ 17

*Union Sch. Dist. v. Smith*,
15 F.3d 1519 (9th Cir. 1994) ........ 30

*United States v. Sioux,*
362 F.3d 1241 (9th Cir. 2004) ........ 28

*Harper v. Virginia Dep't of Tax'n*,
509 U.S. 86 (1993) ........ 48

**State Cases**

*Bellevue Sch. Dist. No. 405 v. Brazier Const. Co.*,
675 P.2d 232 (Wash. 1984) .................... 40, 41

**Federal Statutes**

20 U.S.C. § 1401 .................... 19, 41

20 U.S.C. § 1407 .................... 18, 48

20 U.S.C. § 1411 .................... 18, 38, 48

20 U.S.C. § 1412 .................... passim

20 U.S.C. § 1413 .................... passim

20 U.S.C. § 1414 .................... passim

20 U.S.C. § 1415 .................... passim

20 U.S.C. § 1416 .................... 27, 39

**State Statutes**

Wash. Rev. Code § 28A.155.020 .................... passim

Wash. Rev. Code § 28A.300.040 ....................29

**Federal Regulations**

34 C.F.R. § 300.33 ....................25

34 C.F.R. § 300.101 ....................42

34 C.F.R. § 300.102 ....................42

34 C.F.R. §§ 300.114-.120 ....................25

34 C.F.R. § 300.149 .................... 27, 29

34 C.F.R. §§ 300.201-.213 ....................42

34 C.F.R. §§300.600-.608 .................... 27, 29

**State Regulations**

Wash. Admin. Code § 392-172A-06000 ..................................................... 41, 42, 43

Wash. Admin. Code § 392-172A-01080 ...........................................................43

Wash. Admin. Code § 392-172A-02000 ..................................................... 5, 44, 45

**Other Authorities**

H.R. Rep. No. 105-95 (1997)...................................................................................37

H.R. Rep. No. 108-77 (2003)...................................................................................38

S. Rep. No. 94-168 (1975) .......................................................................................36

S.S.B. 5253, 69th Legis. Serv. Reg. Sess. (Wash. 2025).........................................11

Wash. St. Reg. No. 26-01-130 (December 18, 2025) .............................................11

# I. INTRODUCTION

In the Individuals with Disabilities Education Act ("IDEA"), Congress enacted a comprehensive statutory scheme governing the provision of federal funds to the States to educate disabled students in exchange for each State's commitment to comply with the act's requirements. Congress further vested States with the responsibility to distribute federal funds to the local school districts within their jurisdiction and to monitor and enforce those school districts' compliance with the IDEA. To effectuate the act's purposes, Congress required States to enact policies and procedures that *inter alia* ensure the provision of a free appropriate public education ("FAPE") to children with disabilities between the ages of 3 through 21. However, Congress granted States an exemption to this requirement if the State determined that providing services to students between the ages of 3 through 5 and 18 through 21 would be inconsistent with its law or practice.

Here, the State of Washington determined that providing special education services to students older than 21 was inconsistent with its law and practices. It thus enacted legislation and adopted policies establishing that Washington students were eligible for such services only until the end of the school year in which they turned 21. Although the IDEA grants Washington the authority to adopt such policies and procedures, it instead requires school districts to have in effect policies and procedures consistent with those of their State. Thus, pursuant to the IDEA's

requirements, Washington school districts follow Washington law in determining at what age to "exit" students from special education services.

In 2024, this Court considered a challenge to Washington's policy of exiting students from special education services at age 21 in the putative class action *N.D. v. Reykdal*, 102 F.4th 982 (9th Cir. 2024) brought against Washington State's educational agency. The Court concluded that Washington provided free educational services to non-disabled 21-year-old students, and as such, could not cut off special education services to disabled students of the same age. Following the Court's ruling, the State and the *N.D.* plaintiffs (represented by the same counsel as in this case) entered a settlement providing a remedy to students affected by the State's policy. In that agreement, the State agreed to exercise its plenary power over local school districts to direct them to provide compensatory education services to impacted students to remedy the State's IDEA violation.

After the State and the *N.D.* plaintiffs reached this settlement, Appellants filed the underlying administrative action alleging that Seattle Public Schools ("the District") violated the IDEA when it followed then-existing Washington law to exit S.P. from special education services in June 2023 at the conclusion of the school year in which she turned 21. The administrative law judge ("ALJ") rejected Appellants' claims on summary judgment, concluding that the District was neither authorized nor obligated to ignore then-existing Washington law and continue

services for S.P. past the age of 21. The ALJ further noted that, as a member of the *N.D.* settlement class, S.P. was already entitled to receive compensation for the FAPE denial that resulted from the State's policy of exiting students from special education services upon their 21st birthday.

Appellants appealed the ALJ's ruling. Recognizing the differing obligations the IDEA places on States and school districts, the district court concluded that the IDEA did not grant the District the discretion to apply its own interpretation of Washington law to determine when to exit S.P. from special education services. The district court concluded that, because Appellants' claims related to the legality of the State's policy regarding the age of eligibility for services (which the District was required to follow), the District was not a proper defendant to this action.

The ALJ and district court should be affirmed. The legality of Washington's age of eligibility law has already been litigated against the proper party—Washington State's educational agency—and appropriate relief has already been afforded to S.P. and all similarly situated students to remedy any loss of services as a result of the State's now-invalid policy. Appellants' attempt to also hold the District liable for following a State policy over which it had no control, however, is without legal basis and should be denied.

## II. JURISDICTIONAL STATEMENT

The District agrees with Appellants' jurisdictional statement.

## III. STATUTORY AUTHORITIES

Appellants state that they provided an "addendum containing the complete text of 20 U.S.C. § 1412, 20 U.S.C. § 1413 and 20 U.S.C. § 1415" with their brief. Dkt. 10.1 at 12; *see also* Dkt. 10.2 at 3-55. The documents appearing in Appellants' addendum contain no information as to how they were created or where their content was obtained and, thus, provide no means of verifying their authenticity or accuracy. More importantly, the versions Appellants appended to their brief do not match the current, operative versions of these statutes. Rather, the versions of 20 U.S.C. §§ 1412 and 1413 that Appellants provide appear to be from 1997 and fail to reflect the multiple, subsequent amendments to both statutes. *Compare* Dkt. 10.2 at 21, 35 (indicating 1997 publication dates), *with* 20 U.S.C.A. § 1412 (West) (reflecting amendments in 1998, 2005, and 2016) *and* 20 U.S.C.A. § 1413 (West) (reflecting amendments in 2002, 2005, and 2016). Similarly, the version of 20 U.S.C. § 1415 Appellants provide appears to be from 1999 and fails to reflect the 2005 amendments to that law. *Compare* Dkt. 10.2 at 54 (indicating 1999 publication date), *with* 20 U.S.C.A. § 1415 (West). Because Appellants failed to provide accurate versions of these statutes, the Court should disregard them.

The District has provided a copy of the version of Wash. Rev. Code § 28A.155.020 (2015) (amended 2025) in place in 2023 as an addendum to its brief.

## IV. COUNTERSTATEMENT OF ISSUES

1. Whether the district court should be affirmed because the IDEA required the District to comply with Washington law regarding the age of eligibility for special education services in effect at the time, and the District was neither permitted nor obligated to independently determine whether to comply with Washington law in this respect.

2. Whether the District properly complied with Washington law in effect in June 2023 when it exited S.P. from special education services at the conclusion of the school year in which she turned 21.

## V. STATEMENT OF THE CASE

### A. S.P.'s Educational Services within the District

From 2008 to June 2023, S.P. was eligible to receive special education services from the District. 3-ER-318. S.P. turned 21 during the summer following the 2022-2023 school year. 2-ER-157. At that time, Washington law provided that disabled students in Washington were eligible to receive special education services only until age 21. *See* Wash. Rev. Code § 28A.155.020 (2015) (amended 2025); Wash. Admin. Code §§ 392-172A-02000(1), (2)(c). The District thus exited S.P. from services at the conclusion of the 2022-2023 school year. 3-ER-318.[1]

[1] S.P. did not qualify for extended school year services, so her eligibility for special education services ended on the last day of the 2022-2023 school year. 3-ER-318.

During her final year of eligibility for services, Appellants and the District reached a settlement to resolve Appellants' claims that the District had not previously provided appropriate services to S.P. 2-ER-181; 2-ER-185. In exchange for Appellants' release of claims, the District agreed to provide S.P. with an additional year of transition services as compensatory education. 2-ER-185. But for this agreement, S.P.'s services would have ceased in June 2023 through operation of then-existing State law.

### B. The *N.D. v. Reykdal* Litigation

In November 2022, before S.P. was exited from services, Appellants' counsel in this appeal filed a putative class action lawsuit against the Washington State Superintendent of Public Instruction and the Office of the Superintendent of Public Instruction (collectively "OSPI") on behalf of the parents of two special education students. *N.D. v. Reykdal*, No. 2:22-CV-01621-LK, 2023 WL 5632783, at *1 (W.D. Wash. Aug. 31, 2023). The *N.D.* plaintiffs moved to enjoin enforcement of Washington's age of eligibility law on the grounds that it violated the IDEA, which requires States to adopt policies and procedures for the provision of services to students "between the ages of 3 and 21, inclusive," unless doing so would be "inconsistent with State law or practice." 20 U.S.C. § 1412(a)(1)(A)-(B)(i). The *N.D.* plaintiffs alleged that, because Washington provided "free" educational services to students over the age of 21 through two State-run programs,

Washington could not rely on the exception set forth in Section 1412(a)(1)(B)(i) to end services at age 21. *N.D.*, 2023 WL 5632783, at *1.

The district court denied the *N.D.* plaintiffs' preliminary injunction motion, and plaintiffs appealed to this Court. *N.D.*, 102 F.4th 982. In considering the legality of Washington's age of eligibility law, the Court reiterated its prior holding in *E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.* that a state "'cannot deny special education to disabled students aged 18 through 21 if it in fact provides 'free public education' to nondisabled students in that range of ages.'" *Id.* at 993 (quoting *E.R.K.*, 728 F.3d 982, 987 (9th Cir. 2013)). The Court further held that the *N.D.* plaintiffs had established that Washington offers "'free public education' to nondisabled 21-year-olds" through two State-run programs. *Id.* at 994. It thus concluded that the exception in 20 U.S.C. § 1412(a)(1)(B)(i) did not apply in Washington. *Id.*

Upon remand, the *N.D.* parties requested that the district court enter judgment declaring that "OSPI's refusal to ensure the provision of FAPE [to plaintiffs] on account of their age violates the IDEA," and that Washington's age of eligibility laws were "invalid as contrary to the IDEA to the extent they do not ensure eligible students receive a FAPE until they turn 22." *N.D. v. Reykdal*, No. 2:22-CV-01621-LK, 2024 WL 3358743, at *2 (W.D. Wash. July 10, 2024). On July 10, 2024, the district court entered the parties' requested declaratory judgment

and issued a preliminary injunction against OSPI "preventing it from enforcing the age-out provisions" in Washington law and "directing OSPI to take all actions necessary to ensure that disabled students are able to continue attending their special education programs through disposition of this matter or until they reach the age of 22." *Id.* at *7.

### C. The *N.D.* Settlement

Following entry of this initial declaratory judgment, OSPI and the *N.D.* plaintiffs entered a settlement agreement. *N.D. v. Reykdal*, No. 2:22-CV-01621-LK, 2024 WL 4008571, at *3 (W.D. Wash. Aug. 30, 2024) (summarizing settlement terms). Under this agreement, OSPI agreed to direct local educational agencies ("LEAs"), *i.e.* school districts, to take certain actions to remedy the State's legal violation, including extending the age of eligibility until age 22, resuming services for students who had not yet turned 22 and convening IEP team meetings for students "who wish to receive an award of compensatory education." *Id*. The agreement further provided that "OSPI shall ensure through the exercise of its supervisory powers, to the extent authorized by law, that LEAs comply with these directions." *Id*. The agreement permitted class members to take any dispute about an IEP team's decision regarding compensatory education services to OSPI. *Id.* at *4. Washington's 295 public school districts were not party to the *N.D.* lawsuit or this settlement.

On October 22, 2024, the *N.D.* plaintiffs filed an unopposed motion for preliminary approval of the settlement and to certify a settlement class.[2] 2-ER-098-113. Per the settlement terms, the *N.D.* plaintiffs requested that the district court certify the settlement class to include "[a]ll students in Washington who were exited from special education services due to age before their 22nd birthday between November 11, 2020 and the present" to reflect the IDEA's two-year statute of limitations. 2-ER-101-02. The *N.D.* parties further agreed to the entry of amended declaratory relief, which expanded the district court's prior ruling to encompass the two-year period prior to the filing of the *N.D.* lawsuit. 2-ER-102.

On November 20, 2024, the district court issued an order preliminarily approving the amended class definition and the settlement, which order the court amended on November 22, 2024. *N.D. v. Reykdal*, No. 2:22-CV-01621-LK, 2024 WL 4875055, *3 (W.D. Wash. Nov. 22, 2024). The district court also entered the parties' requested amended declaratory judgment that:

> the state's policy of aging students out of special education at the end of the school year in which they turn 21 pursuant to Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(c) presently violates the IDEA, has violated the IDEA at all times during the two years preceding the filing of this lawsuit, and will continue to violate the IDEA absent a substantial change in the state's policies for charging and waiving tuition for its adult secondary education programs.

[2] The October 2024 version of the settlement agreement submitted with this motion revised certain language in the initial version, but the material terms relevant here remained the same. A copy of the final settlement agreement is at 2-ER-117-18.

*Id.* at *12.

The district court further discussed the benefits class members were to receive under the settlement and accepted the *N.D.* plaintiffs' argument that the appropriate means of resolving OSPI's legal violation was to require LEAs to convene IEP team meetings for students in the class who wished to receive compensatory education services. *Id.* at *9 ("Plaintiffs argue, and Defendants do not dispute, that using 'individual IEP teams to determine compensatory education for class members provides an effective means of determining individual compensatory education awards and alleviates the need for the parties to potentially litigate those issues for all class members."); *see also* 2-ER-111 ("OSPI's obligation to ensure LEAs convene IEP teams provides a tangible benefit to all class members, whether or not the class member ultimately makes use of those services."). The district court further observed that class members retained the right to challenge any compensatory education decision, providing members with appropriate procedural safeguards. *N.D.*, 2024 WL 4875055, *9. The court thus found the proposed relief adequate. *Id.* The court required OSPI to direct LEAs to provide notice of the settlement to class members by December 6, 2024. *Id.* at *10-11.

On June 23, 2025, the district court granted final approval of the *N.D.* settlement. *N.D. v. Reykdal*, No. 2:22-CV-01621-LK, 2025 WL 1736639, at *4

(W.D. Wash. June 23, 2025). In doing so, it found that the 345 eligible class members received notice of the settlement terms, including the right to convene an IEP team meeting. *Id.* at *7. Plaintiffs' counsel reported that only 17 class members had requested an IEP meeting to discuss compensatory education. *Id.* The court reiterated that the class plaintiffs were not bound by the agreement's terms but did not suggest that any separate right of action existed against local school districts as a result of the State's legal violation. *Id.*

In response to the ruling in *N.D.*, in 2025, the Washington Legislature enacted Substitute Senate Bill 5253, amending Wash. Rev. Code § 28A.155.020 to direct OSPI to require school districts to provide services to eligible students through the end of the school year in which the student turns 22. S.S.B. 5253, 69th Legis. Serv. Reg. Sess. (Wash. 2025). OSPI also issued an emergency rule "to expand state funding for students receiving special education funding who turn 21 in alignment with SSB 5253," and indicated permanent rulemaking would follow. Wash. St. Reg. No. 26-01-130 (December 18, 2025).

### D. Appellants' Administrative Action and the ALJ's Decision

Following entry of the *N.D.* settlement, in September 2024, Appellants' counsel filed the underlying administrative due process complaint alleging that the District improperly exited S.P. from special education services at the conclusion of the school year in which she turned 21. 2-ER-156-59. Appellants sought a

declaration that the District violated the IDEA and requested "[c]ompensatory education to make up for the services [S.P.] was entitled to during the 2023-2024 school year." 2-ER-159. At the time of Appellants' filing, S.P. had turned 22 years old and was no longer eligible for special education services under Section 1412(a)(1)(A). 2-ER-156. S.P. was, however, a member of the *N.D.* settlement class and entitled to the benefits her counsel had just negotiated on behalf of students in her same situation. 3-ER-323 (CL 16).

Indeed, while the administrative matter was pending, the District provided Appellants notice of the *N.D.* settlement and offered to convene S.P.'s IEP team to discuss compensatory education services. 3-ER-323 (CL 16). Appellants did not accept the District's offered IEP team meeting, and S.P.'s IEP team thus has not considered what compensatory services S.P. may be entitled as a member of the *N.D.* class. *See* 3-ER-324-25 (CL 22). Appellants state they have not "engaged in the class action process because this litigation was pending prior to the preliminary approval being granted," and because the *N.D.* settlement did "not bind class members." Dkt. 10.1 at 16. The District agrees that S.P. was not bound to accept the benefits of the *N.D.* settlement. *See, e.g.*, *N.D.*, 2024 WL 4875055, at *8. But it is undisputed that S.P.'s counsel negotiated that settlement prior to filing the underlying administrative proceeding, and that the *N.D.* settlement provided S.P. with the same compensatory education relief she seeks in this case. *Compare N.D.*,

2024 WL 4008571, at *3 (notice of settlement filed on July 22, 2024, providing class members, including S.P., access to compensatory education), *with* 2-ER-159 (due process complaint filed on September 3, 2024 seeking same remedy).

While the *N.D.* plaintiffs' request to approve their settlement was pending, Appellants moved for summary judgment in the administrative action. 2-ER-160-79. The ALJ issued her order on January 13, 2025, shortly after the *N.D.* district court entered its amended declaratory judgment and second order granting preliminary settlement approval. 3-ER-317-27; *N.D.*, 2024 WL 4875055, at *1.

The ALJ first rejected Appellants' argument that the *N.D.* declaratory judgment was tantamount to a ruling that the District violated the IDEA, noting that the *N.D.* court "did not consider or make a ruling" to this effect. 3-ER-323 (CL 18). The ALJ further rejected Appellants' argument that, as of June 2023, the District was required to provide a FAPE to students until age 22 based on this Court's decision in *E.R.K.*, as *E.R.K.* addressed Hawaii law and "did not consider Washington law or decide whether Washington offered 'free public education' to nondisabled students between 18 and 21." 3-ER-324 (CL 19). The ALJ also concluded that "there is no merit to the Parents' contention that the District was obligated to make its own determination of whether the state of Washington provided 'free public education' to nondisabled students through its adult education programs." 3-ER-324 (CL 20). The ALJ held that "OSPI is responsible

for overseeing K-12 education in Washington state," and that the District correctly argued that "it 'is not authorized to unilaterally determine that it is not required to comply with state laws and regulations.'" *Id*. (quoting 2-ER-278).

The ALJ further found it "significant" that the District had offered to convene S.P.'s IEP team to discuss compensatory education services consistent with the obligations OSPI placed upon it pursuant to the *N.D.* settlement. 3-ER-324-25 (CL 22). The ALJ noted that S.P. "is already entitled to receive compensation for the FAPE denial" resulting from the State's legal violation "in an amount to be determined by her IEP team." *Id.* The ALJ thus concluded that:

> Given that the Student is already entitled to compensation for the services she missed as a result of the state's violation of the IDEA, that the Student's IEP team has already offered to meet to discuss compensatory education, and that the Student can challenge the IEP team's decision, it would not be appropriate for this tribunal to hold a due process hearing to address compensatory education *before* the IEP team has even been given a chance to consider it.

*Id.* (emphasis original). The ALJ rejected Appellants' claims that the District violated the IDEA and dismissed Appellants' action. 3-ER-325 (CL 23).

### E. The District Court's Decision

The district court affirmed the ALJ's determination that the District was not liable for applying existing Washington law to exit S.P. from services at the end of the school year in which she turned 21. 1-ER-3-4. The district court first concluded that the IDEA "contains separate provisions related to funding eligibility for state

educational agencies and local educational agencies." 1-ER-8. Specifically, the district court observed that 20 U.S.C. § 1412 obligates States to maintain policies and procedures regarding the age of eligibility for special education services, while 20 U.S.C. § 1413 obligates school districts to have policies and procedures consistent with those established by their State. *Id*. The district court thus concluded that the language of Section 1413 "does not grant local educational agencies any discretion to apply their own interpretation of state law." *Id.*

The district court further noted that adopting Appellants' interpretation of the IDEA would lead to "absurd results" as "every school district would be empowered to implement policies and procedure based on its own interpretation of the relevant law." *Id.* The district court cited authority establishing that, given their oversight responsibilities, States are proper defendants in cases challenging a state policy or alleging a systemic violation of the IDEA. 1-ER-9. The court further concluded that, "[g]iven that this case arises from a state policy, and in light of the respective duties of the state and local educational agencies under the IDEA, the District is not a proper defendant to this action." 1-ER-10.

## VI. SUMMARY OF THE ARGUMENT

Appellants advance several arguments in support of their claim that the district court erred in concluding that the District was not a proper defendant and did not violate the IDEA in exiting S.P. at the conclusion of the school year in

which she turned 21. Each of Appellants' arguments, however, ignore the fundamental structure of the IDEA requiring States to enact policies and procedures that meet certain specifically-defined conditions and requiring school districts to follow the policies and procedures of their State in each of these areas. This includes the obligation that school districts follow their governing State's policy with respect to the ages at which a student is eligible to receive special education services. Appellants' various statutory interpretation arguments do not support Appellants' claim that the District was obligated to ignore State law and instead enact its own policies based on what Appellants contend was the proper interpretation of federal law. The IDEA's plain language forecloses any such conclusion, and the district court rightly acknowledged the absurdity of Appellants' proposed interpretation of the IDEA's mandates.

Appellants additionally claim that the doctrines of preemption and retroactivity dictate a finding that the District violated the IDEA in June 2023 when it exited S.P. from special education services. Appellants' preemption argument relies on the faulty contention that it was "impossible" for the District to comply with both federal and State law in this respect. But the District did just that when it followed the State's policy in determining the age of eligibility for services, as the IDEA required it to do. Appellants further claim that the *N.D.* ruling retroactively applies to school districts, but their argument again ignores that

the IDEA places different obligations on States and LEAs. Thus, while OSPI failed to comply with its obligations created under the IDEA, the District complied with its obligations created by the IDEA and Washington law and policy. Appellants' attempts to argue otherwise have no merit.

## VII. STANDARD OF REVIEW

This case presents questions of law that are subject to de novo review. *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1207 (9th Cir. 2008) (internal citation omitted). The Court may affirm the district court on any ground supported by the record. *D.O. By & Through Walker v. Escondido Union Sch. Dist.*, 59 F.4th 394, 407 (9th Cir. 2023) ("Because D.O. is not seeking more relief than what the district court already granted, D.O. may argue and we may reach 'any ground supported by the record.'") (quoting *U.S. v. Hilger*, 867 F.2d 566, 567 (9th Cir. 1989)); *see also Engleson v. Burlington N. R. Co.*, 972 F.2d 1038, 1042 (9th Cir. 1992). As the party seeking relief, Appellants bear the burden of proof. *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010); *Crofts v. Issaquah Sch. Dist. No. 411*, 22 F.4th 1048, 1053 (9th Cir. 2022).

## VIII. ARGUMENT

### A. The IDEA Defines the Responsibilities of States and Local Educational Agencies and Applies Different Requirements to Each.

To evaluate Appellants' claims, it is important to understand the structure of the IDEA, as well as the specific legal provisions at issue in this case. Congress

enacted the IDEA for the purpose of providing federal funding to States to educate students with disabilities in exchange for the State's agreement to comply with federal requirements as to how such students are to be served. *See, e.g.*, 20 U.S.C. § 1411.[3] The IDEA vests the obligation to provide a FAPE to the States and authorizes States to enact rules, regulations and policies that conform to the purposes of the act. 20 U.S.C. §§ 1407(a)(1), 1412(a)(1). To receive federal funding, a State must submit a plan to the Secretary of Education providing assurance that it has in effect policies and procedures that meet each of the 25 enumerated conditions set forth in the statute. 20 U.S.C. § 1412(a)(1)-(25).

As relevant here, the plan must include the State's assurance that "a free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive." 20 U.S.C. § 1412(a)(1)(A). The IDEA further provides, however, that a State's obligation to provide a FAPE does not apply to children aged 3 through 5 and 18 through 21 "to the extent that its application to those children would be inconsistent with State law or practice . . . respecting the provision of public education to children in those age ranges." 20 U.S.C. § 1412(a)(1)(B)(i). Thus, "a State need not provide a FAPE to disabled

[3] Under Section 1411, eligible States are allocated federal funding for certain uses consistent with the administration of educational programs to disabled students. *See generally* 20 U.S.C. §§ 1411(d), (e). States are required to distribute any remaining federal funds through subgrants to local educational agencies "that have established their eligibility under section 1413 of this title[.]" 20 U.S.C. § 1411(f).

students between the ages of 18 and 21 if the State does not provide a public education to nondisabled students in that same age range." *N.D.*, 102 F.4th at 987. The IDEA further provides that the State is the entity "responsible for ensuring" that "all educational programs for children with disabilities in the State . . . meet the educational standards of the State educational agency." 20 U.S.C. §§ 1412(a)(11)(A)(i), (ii)(II); *see also* 20 U.S.C. § 1401(9) (defining a FAPE as "special education and related services" that *inter alia* "meet the standards of the State educational agency" and are "provided in conformity" with the IEP required under Section 1414).

A separate section of the IDEA addresses the funding eligibility of LEAs, which are defined as public school districts. 20 U.S.C. § 1413; *see also* 20 U.S.C. § 1401(19) (defining LEA).[4] This section provides that an LEA is eligible for assistance under the act if it submits a plan to its State's educational agency ("SEA") establishing that it meets certain conditions, including that:

> The local educational agency, in providing for the education of children with disabilities within its jurisdiction, has in effect policies, procedures, and programs that are consistent with the State policies and procedures established under section 1412 of this title.

20 U.S.C. § 1413(a)(1). Thus, Section 1412 requires States to adopt certain policies and procedures that conform to the conditions set forth in that section, while

[4] The IDEA also defines the terms State and State educational agency and clarifies that the State educational agency is responsible for the oversight of public schools within a State. 20 U.S.C. § 1401(31), (32).

Section 1413 requires school districts to have in effect policies, procedures and programs that are "consistent with" those of their governing State.

In addition to the provisions governing State and LEA funding eligibility, the IDEA also contains specific requirements governing the conduct of special education evaluations, the development of IEPs and the determination of appropriate educational placements. 20 U.S.C. § 1414. Unlike Section 1412, which solely governs State action, and Section 1413, which applies only to LEAs, Section 1414 references the respective obligations of both. *See, e.g.*, 20 U.S.C. § 1414(a)(1)(A) (providing that "a State educational agency, other State agency, or local educational agency" shall conduct evaluations of students to determine their eligibility for special education services); 20 U.S.C. § 1414(e) (providing that "each local educational agency or State educational agency shall ensure that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child"). Section 1414 also sets forth those provisions that are applicable only to LEAs. *See, e.g.*, 20 U.S.C. § 1414(a)(2)(A) (stating that a "local educational agency shall ensure" that students with disabilities are reevaluated); 20 U.S.C. § 1414(d)(4)(A)(i)-(ii) (requiring the "local educational agency" to review and revise IEPs as required).[5]

---

[5] Section 1415 similarly contains provisions applicable to both SEAs and LEAs and requires both to "establish and maintain procedures" ensuring parents and students are guaranteed certain procedural safeguards. 20 U.S.C. § 1415(a).

Through its unambiguous terms, the IDEA defines the respective legal obligations of States, SEAs and LEAs. As relevant here, the IDEA places upon States the obligation to have in effect policies and procedures that ensure delivery of a FAPE to eligible students and allows States to determine whether it would be inconsistent with State law or practice to provide such services to students aged 21. 20 U.S.C. § 1412(a)(1)(A)-(B). The IDEA requires school districts, on the other hand, to have in effect policies and procedures "consistent with" those of their State in this respect. 20 U.S.C. § 1413(a)(1).

### B. The District Court Correctly Determined that the District was not Legally Responsible for the State's Violation of the IDEA, and Appellants' Arguments to the Contrary are without Merit.

Against this statutory backdrop, the district court considered Appellants' claim that the District violated the IDEA when it followed the State's policies and procedures in effect at the time to exit S.P. from services at the end of the school year in which she turned 21. Recognizing the differing obligations the IDEA places on States and LEAs in this regard, the district court concluded that the District could not disregard Washington law and apply its own interpretation of the relevant law. 1-ER-8. The district court thus correctly determined that the District was not a proper defendant to Appellants' action. 1-ER-10. Appellants' arguments that the District is liable for following State law are easily resolved by the straight-forward language of the relevant statutory provisions.

1. The District Complied with Federal Law when it Exited S.P. from Services at Age 21.

Appellants first advance the purportedly "basic proposition" that the IDEA obligated the District to provide S.P. a FAPE until her 22nd birthday. Dkt. 10.1 at 19-20. This is a misreading of the requirements in Sections 1412 and 1413 discussed above. *See* Sec. VIII.A *supra*. In rejecting this argument, the district court properly recognized the relative statutory obligations placed upon the District and the State in this respect.[6] 1-ER-8-10. Simply put, the IDEA grants Washington the discretion to determine whether students are eligible for services after age 21, while the IDEA requires Washington's LEAs to follow State law.

Appellants next contend that the district court erred in determining that the District was not a proper defendant because the IDEA's procedural safeguards permit "any party to present a complaint" with respect to "any matter relating to . . . the provision of a free appropriate public education" to a child. Dkt. 10.1 at 20-21 (quoting 20 U.S.C. § 1415(b)(6)(A)). But a party asserting a complaint still must articulate a viable legal claim against the opposing party. Nothing in the IDEA's procedural safeguards indicates anything to the contrary. Here, the district court

[6] In their brief, Appellants misstate the scope of the district court's ruling, claiming that it held that school districts are "not obligated to comply with federal law," and are instead "immune from liability for violating the substantive requirements of the IDEA." Dkt. 10.1 at 10, 19. School districts are obligated to comply with the IDEA provisions that apply to them. As set forth above, this includes those set forth in Sections 1413, 1414 and 1415. The district court did not conclude the contrary.

rightly acknowledged that the District cannot be liable for a claim that relates to the State's policy cutting off services at age 21 because it lacked the responsibility (or authority) to interpret the State's law in this respect. 1-ER-10. It thus is not a proper party given the nature of Appellants' claim, which hinges exclusively on the legality of the State's policy that the District was bound to follow.

Indeed, Appellants do not cite any authority for the proposition that a school district is a proper party to a lawsuit involving a challenge to a State's policy regarding the age of eligibility for services. Without exception, such cases have instead been asserted against the State agency responsible for establishing the policy, not individual school districts. *E.R.K.*, 728 F.3d 982 (evaluating claims against SEA); *N.D.*, 102 F.4th 982 (same); *K.L. v. Rhode Island Bd. of Educ.*, 907 F.3d 639 (1st Cir. 2018) (same); *A.R. v. Connecticut State Bd. of Educ.*, 5 F.4th 155 (2d Cir. 2021) (same); *K.O. by & through J.O. v. Jett*, No. 21-CV-1837, 2023 WL 5515981 (D. Minn. Aug. 25, 2023) (same). This makes sense given the statutory scheme set forth in the IDEA described above.

Appellants next fault the district court for relying on authority establishing that claims of systemic IDEA violations are appropriately brought against the States. Dkt. 10.1 at 21-24; 1-ER-9. Appellants attempt to distinguish this authority on the ground that none of the cases on which the district court relied concluded that the LEA was not a proper party to the litigation at issue. But by the same

token, none of these cases determined that an LEA can be liable for following an existing State law when that is what the IDEA required it do. *See* 1-ER-9 ("The Court has found no case addressing local educational agency liability in the context of a similar state law."). And although these cases do not arise under the same circumstances as this case, they recognize the IDEA's distinction between the legal obligations placed on States and LEAs and establish that the respective liability of each depends on the nature of the specific legal claim at issue.[7]

For example, in *Jose P. v. Ambach*, the Second Circuit upheld the district court's determination that both the New York LEA and SEA "violat(ed) the requirements of federal and New York law and regulations" as a result of the LEA's failure to timely evaluate and place disabled students in appropriate programs. 669 F.2d 865, 867 (2d Cir. 1982). In that case, both the LEA and SEA had failed to comply with their respective statutory obligations under the IDEA—namely, the LEA's obligation to timely evaluate and place students as required under both State and federal law, and the SEA's obligation to ensure the LEA's compliance in this regard. *Id.* at 870-71. This is unlike here, where the District complied with its obligation under the IDEA to follow Washington's policies and procedures regarding the age of eligibility for services. The district court's decision

[7] The district court cited to *Kalliope R. ex rel. Irene D. v. New York State Dep't of Educ.*, 827 F. Supp. 2d 130 (E.D.N.Y. 2010) for this proposition. 1-ER-9. Appellants do not dispute this statement. Dkt. 10.1 at 22.

is thus consistent with *Jose P.* in recognizing that SEAs and LEAs can only be liable for violating IDEA provisions that apply to them.

*Corey H. v. Board of Educ. of City of Chicago* similarly examined the respective roles of SEAs and LEAs under the IDEA. 995 F. Supp. 900 (N.D. Ill. 1998). The court first observed that "the provisions of the IDEA delegate to the SEAs the responsibility for compliance as well as the supervisory power to implement policies and procedures to make certain that LEAs have complied with the Act." *Id.* at 905. The court then examined the IDEA's least restrictive environment or "LRE" provision requiring that students with disabilities be educated with non-disabled students to the maximum extent possible. *Id.* at 905-06. The court explained that the SEA is responsible for ensuring LEAs meet this statutory mandate through its policies, while LEAs are responsible for developing individual IEPs for students that satisfy this requirement. *Id*.[8] The court acknowledged the Chicago LEA's admitted failure to comply with the LRE mandate placed upon it and further held that the Illinois SEA was also liable for this failure. *Id.* at 907, 909. In so holding, the court discussed other authority holding SEAs liable both for failing to adequately oversee an LEA's provision of

[8] The court cited to the federal regulations describing the LRE requirement, which have since been recodified at 34 C.F.R. §§ 300.114-120. Among other provisions, these regulations provide that "each public agency" (defined broadly to include *inter alia* SEAs and LEAs) is responsible for ensuring the LRE mandate is met. 34 C.F.R. § 300.114; *see also* 34 C.F.R. §§ 300.33 (defining public agency).

services, as well as an LEA's systemic failure to comply with the IDEA. *Id.* at 912-14. Thus, this case establishes that States can be liable under the IDEA for failing to comply with their statutory obligations. It does not hold that an LEA can be liable when its State adopts a policy or procedure that the LEA is required to follow that is later found to have violated the IDEA—the situation presented here.

The other cases Appellants reference are consistent with this same principle. Dkt. 10.1 at 24. In both *Quatroche v. East Lyme Bd. of Educ.*, 604 F. Supp. 2d 403 (D. Conn. 2009) and *Fetto v. Sergi*, 181 F. Supp. 2d 53 (D. Conn. 2001), the Connecticut district court evaluated whether claims of systemic IDEA violations could be brought against the SEA. Appellants contend that the court did not determine that the LEAs were not also liable for these systemic violations, but in neither case did the plaintiffs attempt to assert such a claim against the LEA at issue. *Quatroche*, 604 F. Supp. 2d at 406, 411-12 (noting that systemic violation claim asserted only against state defendants); *Fetto*, 181 F. Supp. 2d at 58 (summarizing claims against state agencies). Nor would such a claim have made sense as LEAs are neither authorized nor obligated to oversee their SEA's implementation of the IDEA's mandates. Instead, Section 1412 establishes that the SEA is "responsible for ensuring" that the requirements of that section are met and that "all educational programs for children with disabilities in the State," including those administered by an LEA, "meet the educational standards of the [SEA]." 20

U.S.C. § 1412(a)(11)(A)(i), (ii)(II); *see also* 20 U.S.C. § 1416 (vesting supervisory authority in SEA to monitor LEA compliance); 34 C.F.R. §§ 300.149, 300.600-608 (IDEA regulations providing same). These cases only further demonstrate the respective obligations of SEAs and LEAs under the law.

In sum, the District does not dispute that local school districts can be liable for violating provisions of the IDEA that are applicable to them. The district court did not conclude the contrary. It instead recognized that the District was not a proper defendant in this case given the respective obligations the IDEA places on States and LEAs discussed above. Although Appellants attempt to characterize this case as one involving the question of whether the District satisfied its obligation to provide S.P. a FAPE, it is instead a challenge to the State's policy that terminated services to disabled students at the age of 21 brought against the wrong actor. The legality of the State's policy has already been litigated against the proper defendant—OSPI—and appropriate relief has already been granted to S.P. and similarly situated students. And although Appellants state that they are not bound by the settlement reached in that case, that does not mean that Appellants have a viable cause of action against the District, which did not violate the IDEA when it followed then-existing State law to exit S.P. from special education services at the age of 21. Dkt. 10.1 at 13 n.2. Rather, as the district court acknowledged, the IDEA

did not provide the District with the discretion to do anything else. Appellants have failed to identify any authority establishing the contrary.

2. Appellants' Attempts to Rewrite the District's Obligations under Section 1413 are Unavailing.

*a. The Plain Language of Sections 1412 and 1413 do not Support Appellants' Proposed Interpretation of the IDEA's Requirements.*

Appellants next advance their proposed "interpretation" of Section 1413, claiming that this statute places an obligation on LEAs to comply with the "underlying policies and procedures" of Section 1412, as well as the policies and procedures adopted by their SEA. Dkt. 10.1 at 27. Appellants appear to contend that LEAs are required to adopt their own policies and procedures that they believe comply with the obligations placed on States in Section 1412, as well as policies and procedures that satisfy their obligations under Section 1413. Appellants' proposed interpretation of this statutory scheme creates an unworkable system that is inconsistent with the IDEA's plain text.

As this Court has recognized, "[t]he starting point for an examination of statutory meaning is the text of the statute itself." *Cleveland v. City of Los Angeles*, 420 F.3d 981, 989 (9th Cir. 2005) (citing *United States v. Sioux,* 362 F.3d 1241, 1246 (9th Cir. 2004)). "When the statutory language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Arlington Cent. Sch. Dist. Bd. of Educ. v.*

*Murphy*, 548 U.S. 291, 296 (2006) (internal quotation omitted). "The inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Cleveland*, 420 F.3d at 989 (internal quotation omitted). As set forth above, the IDEA's requirements are plain, coherent and consistent with regard to which agency has the authority to determine at what age students are eligible to receive special education services within a particular State. 20 U.S.C. § 1412(a); 20 U.S.C. § 1413(a)(1). The Court should enforce these statutes as written and reject Appellants' proposed interpretation of their terms.

In addition to being inconsistent with the IDEA's plain terms, the district court rightly concluded that Appellants' proposed interpretation of Section 1413 would lead to absurd results as "every school district would be empowered to implement policies and procedures based on its own interpretation of the relevant law." 1-ER-8. This is not what Congress intended in enacting Sections 1412 and 1413. An LEA cannot both adopt its own unique policies and procedures under Section 1412 while also adopting policies and procedures consistent with those of its State, as Section 1413 requires. And it would be impossible for a State to fulfill its supervisory obligations if every school district within the State could decide whether to comply with the State's policies. 20 U.S.C. §§ 1412(a)(11), 1416; 34 C.F.R. §§ 300.149, 300.600-608; *see also* Wash. Rev. Code § 28A.300.040(1)

(providing that OSPI has "supervision over all matters pertaining to the public schools of the state").

Appellants attempt to liken this case to a situation in which a State regulation provides more protection than federal law and a school district is required to comply with the State law's broader protections. Dkt. 10.1 at 26. But this analogy only supports the District's argument. Were LEAs not bound by their State's policies and procedures, they would not be subject to the greater protections a State policy may provide. Instead, LEAs would be entitled to ignore State law in favor of federal law, an outcome inconsistent with the precedent on which Appellants rely. *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1527 (9th Cir. 1994) (holding that courts will enforce more stringent State regulations so long as they are consistent with the IDEA).

Appellants next reiterate their Section 1415(b)(6) argument addressed above, suggesting their reading "better harmonizes" the requirements of Sections 1412, 1413 and 1415. Dkt. 10.1 at 27. They contend that these statutes require LEAs to "comply with both the underlying 'policies and procedures' of [Section] 1412 and the policies and procedures adopted by the SEA." *Id.* Appellants again do not explain how this would work operationally, nor how allowing (or requiring) LEAs to adopt their own interpretations of the requirements in Section 1412 would be consistent with Section 1413. Congress did not intend for LEAs to have such

authority under the statutory scheme it created. Nothing in Section 1415(b)(6) supports a contrary result.

Appellants further contend that their proposed interpretation of the IDEA's statutory scheme is "far more consistent" with the interpretation of spending clause legislation generally. Dkt. 10.1 at 27-28 (citing *Arlington*, 548 U.S. at 296). *Arlington* establishes that "when Congress attaches conditions to a State's acceptance of federal funds, the conditions must be set out unambiguously" to ensure states receiving federal funds do so "knowingly and voluntarily." 548 U.S. at 296 (internal quotation and citations omitted). It further establishes that states receiving federal funds "cannot knowingly accept conditions of which they are unaware or which they are unable to ascertain." *Id*. (internal quotation omitted). These principles again only support the District's position. The IDEA says what LEAs are required to do vis-à-vis their governing State and provides both States and LEAs clear notice of their respective obligations. Contrary to Appellants' argument, nothing in Section 1415(b)(6) unambiguously establishes that an LEA can be liable for the legal violation of a separate actor. It is Appellants' proposed interpretation of this statutory scheme that creates uncertainty, as States could no longer rely on their statutorily-granted authority to establish policies and procedures that their LEAs are required to follow, and LEAs could no longer rely on their State's policies and procedures in operating their programs.

Appellants next disagree with the district court's conclusion that their proposed statutory interpretation would create absurd results, claiming LEAs are "already require[ed] to comply with the relevant federal law over conflicting state law." Dkt. 10.1 at 28. Appellants do not explain what the "relevant federal law" is in this case, nor how the District purportedly failed to follow it given the requirements placed upon it under Section 1413, the relevant federal law at issue. They instead rely on two cases that addressed the question of whether State statutes of general application were preempted by the IDEA. *Id.* (citing *Doe by Gonzales v. Maher*, 793 F.2d 1470 (9th Cir. 1986), *aff'd as modified sub nom. Honig v. Doe*, 484 U.S. 305 (1988) and *R.B. v. Mastery Charter Sch.*, 532 F. App'x 136 (3d Cir. 2013)).[9] In both cases, the courts determined that the State statutes (one related to student discipline and one to mandatory attendance) conflicted with the IDEA's stay-put provision, and that the school districts could not comply with both the State law of general application and the IDEA. *Maher*, 793 F.2d at 1485-86; *R.B.*, 532 F. App'x at 142. They thus concluded that the State laws were preempted. *Id.*

---

[9] Appellants also cite *Hacienda La Puente Unified Sch. Dist. of Los Angeles v. Honig*, 976 F.2d 487 (9th Cir. 1992). There, the school district argued that a provision in a State statute concerning expulsion procedures for disabled students meant parents had no right to a due process hearing if their child had not yet been found eligible for special education services. *Hacienda*, 976 F.2d at 492-93. The Court found that interpretation inconsistent with the IDEA and related California law. *Id.* Here, the District correctly interpreted Washington law in effect at the time it exited S.P. from services, and *Hacienda* does not support Appellants' arguments.

This case presents a fundamentally different inquiry. Here, there is no State law of general applicability at issue, nor any basis to conclude that the District could not comply with both the relevant State law and the IDEA. That is because the IDEA authorized Washington to enact the law and policy at issue regarding the age of eligibility for services and required the District to operate its programs in a manner "consistent with" the policy of the State. 20 U.S.C. § 1412(a)(1); 20 U.S.C. § 1413(a)(1). Appellants' contention that "state law require[ed] one thing, and federal law require[ed] the opposite" thus is incorrect. The District complied with federal law by complying with State law, as it was required to do. Appellants' attempt to analogize this to a preemption claim is without merit.

Appellants finally advance a series of hyperbolic arguments claiming that the district court's decision leaves parents "powerless to challenge district action," and instead forces "them to proceed against the State" with respect to IDEA violations. Dkt. 10.1 at 29. Appellants claim that school districts now have "free reign to ignore the provisions of the IDEA so long as it [sic] is not directly contradicted by State policies." Dkt. 10.1 at 30. But the district court's ruling does not change any of the rights afforded to parents and students under the IDEA. It instead establishes only that, in the narrow confines of this case, the District was not a proper defendant because it was obligated to follow State law with respect to the age of eligibility for special education services and was not free to interpret that

law on its own. 1-ER-8-10. As the entity responsible for determining whether it would be "inconsistent" with State law or policy to provide services to students over age 21, the State was the proper party to defend its determination in this respect. 20 U.S.C. § 1412(a)(1)(B). School districts remain obligated to follow the provisions of the IDEA that apply to them, and parents and students still have the right to bring claims against their school district alleging violations of such provisions.[10] Nothing in the district court's decision changes this landscape.

Appellants lastly contend that requiring school districts to follow the laws of their State "removes any obligation of school districts to hold state's [sic] accountable to the IDEA." Dkt. 10.1 at 30. Appellants do not explain what they mean by this phrase, but as set forth above, school districts have never had the "obligation" or authority to regulate the conduct of their governing State. Indeed, this Court has concluded that the IDEA does not grant LEAs the authority to sue their State for alleged non-compliance with the IDEA's procedures. *Lake Washington Sch. Dist. v. Off. of Superintendent of Pub. Instruction*, 634 F.3d 1065, 1069 (9th Cir. 2011) ("[W]e join our sister circuits in holding that a school district or other local educational agency has no express or implied private right of civil action under the IDEA to litigate any question aside from the issues raised in the

[10] As set forth above, this not only includes the obligations set forth in 20 U.S.C. § 1413, but also those that apply to LEAs contained in 20 U.S.C. §§ 1414 and 1415. *See* Sec. VIII.A. *supra*.

complaint filed by the parents on behalf of their child."); *Fairfield-Suisun Unified Sch. Dist. v. California Dep't of Educ.*, 780 F.3d 968 (9th Cir. 2015) (concluding that school districts have no express or implied right of action to challenge State compliance with the IDEA's procedures). Other circuits have recognized this same limitation with respect to the enforcement of the IDEA's substantive obligations. *See, e.g., Cnty. of Westchester v. New York*, 286 F.3d 150, 151 (2d Cir. 2002) ("The IDEA does not provide the Counties with a private right of action to enforce the Act's substantive provisions against the State or its agencies[.]"); *Andrews v. Ledbetter*, 880 F.2d 1287, 1290 (11th Cir. 1989) ("[N]othing indicates that Congress intended to grant an LEA statutory standing to bring suit to compel a state agency to fulfill its statutory duties."). Appellants' argument fails to appreciate this authority. Moreover, OSPI has already been "held accountable" for its IDEA violation and appropriate relief has been afforded to impacted students. Appellants fail to explain the purpose of this litigation given this fact.

*b. To the Extent Relevant, the Statutory and Legislative History of Section 1413 Supports the District's Arguments.*

Appellants next contend that their proposed interpretation of Section 1413 is "fully supported by the relevant statutory and legislative history," which they claim "unequivocally confirms that Congress fully intended for the LEAs to comply with *all* portions of the IDEA." Dkt. 10.1 at 30 (emphasis original). As an initial matter, courts only look to legislative history if a statute is ambiguous. *Avila v. Spokane*

*Sch. Dist. 81*, 852 F.3d 936, 941 (9th Cir. 2017). As set forth above, Section 1413 is not. But even were it appropriate to examine the legislative history here, it only supports the District's position.

Appellants first claim that the IDEA's predecessor statute, the Education for All Handicapped Children Act of 1975 ("EHA"), required school districts to comply with "the underlying obligations of section 1412 and 1413(a), not just the state policies themselves." Dkt. 10.1 at 31. Their contention is again inconsistent with the plain statutory language. The EHA required States to have plans that set forth the policies and procedures the State would undertake to assure a FAPE was available to students with disabilities. 20 U.S.C. § 1412(2)(B) (1975). And, like the IDEA, the EHA required LEAs to ensure their policies and programs were "consistent with" the policies and procedures in their State's plans. 20 U.S.C. § 1414(a)(6) (1975). Under Appellants' proposed interpretation, however, LEAs would have been required to "comply" with the obligations placed on States, including submitting a State plan to the Commissioner. Not only is that contrary to the statute's plain language, it is also inconsistent with Congress' decision to vest States with supervisory authority over the provision of a FAPE. *See* S. Rep. No. 94-168 at 24 (1975) (noting that, while different agencies may deliver services, responsibility for ensuring compliance with the act "must remain in a central agency overseeing the education of handicapped children, so that failure to deliver

services or the violation of the rights of handicapped children is squarely the responsibility of one agency").

To the extent there was any confusion in the respective obligations of LEAs and States in the EHA, Congress clarified its intent in the 1997 amendments to the statutory scheme (which also renamed it the IDEA). In passing these amendments, the Committee explained that they made it "easier to understand and use the IDEA" by, among other things, "consolidat[ing] all State educational agency eligibility requirements in section [1412] and all local educational agency (LEA) eligibility requirements in section [1413]." H.R. Rep. No. 105-95 at 84 (1997). Thus, Appellants' argument that, as part of the amendments, the House Education Committee "explicitly confirmed" that LEAs were obligated to comply with all provisions in part B of the IDEA has no merit. Dkt. 10.1 at 31-32. The amendments were instead intended to clarify the agencies' respective obligations under the IDEA, which plainly provides that Section 1412 applies to States and Section 1413 to LEAs.

The portions of the Committee's summary of the amendments that Appellants cite do not support a contrary reading. *Id.* Although they contain general references to "compliance with part B of the IDEA," neither confirms any intent to permit or require LEAs to take on all of the requirements in that section as opposed to only those that Congress placed upon them. *Id.* at 32; H.R. Rep. No.

105-95 at 92-93 (1997). Part B instead speaks to the obligations of multiple agencies and defines those obligations in the statutory text. For example, Section 1411 governs the Secretary of Education's allocation of funds under the IDEA, while Section 1416 vests the Secretary and the States with certain monitoring and enforcement responsibilities. 20 U.S.C. §§ 1411, 1416. Under Appellants' logic, school districts would be responsible for these obligations as well because they fall within Part B. But just as local school districts are not authorized to take on the responsibilities of the Secretary, nor are they authorized to take on the responsibilities of their governing State.

Appellants next excerpt the House Education Committee's comments on Section 1413 as part of the IDEA's 2004 reauthorization. Dkt. 10.1 at 33. Appellants contend that by referencing "the Act," the Education Committee indicated it "fully intended" for Section 1413 to require LEAs to comply with "the Act" and "not just the State policies and procedures developed as part of the Act." *Id.* But again, the District does not dispute that school districts are required to comply with the portions of "the Act" that are applicable to them. This reference does not establish the contrary. Rather, the language the Committee referenced in its comment simply reiterated the requirement that LEAs have in effect "procedures, and programs that are consistent with the State policies and procedures established under section [1412]." H.R. Rep. No. 108-77 at 216 (2003).

Since its inception, the IDEA has been clear about the obligations it places on different agencies. Appellants' suggested reading of the legislative history does not support their claims to the contrary.

*c. Appellants' Contention that Courts Treat State and LEA FAPE Obligations as Identical is Meritless.*

Appellants finally claim that the district court's interpretation of Section 1413(a)(1) is inconsistent with how courts have interpreted the EHA/IDEA historically, claiming courts "routinely and without issue" treat States' and LEAs' obligations to provide a FAPE as "identical." Dkt. 10.1 at 33-34. The cases Appellants cite do not support their contention.

Appellants first cite the Supreme Court's statement in *Board of Education v. Rowley* that compliance with the IDEA is assured by provisions that permit the withholding of federal funds "upon determination that a participating state or local agency has failed to satisfy the requirements of the Act." 458 U.S. 176, 183 (1982). Appellants claim that by referencing both agencies, the Court somehow implied that their obligations under the IDEA were "identical." Dkt. 10.1 at 34. Yet the provisions the Court cited in its statement set forth separate processes for withholding funding based on which agency failed to comply with its respective obligations under the IDEA. 20 U.S.C. § 1414(b)(2)(A) (1975) (addressing LEA's failure to comply with requirements in its application for State funding); 20 U.S.C.

§ 1416 (1975) (addressing State's failure to comply with IDEA provisions applicable to States).

Appellants next contend, based on one footnote in *R.L. v. Miami-Dade Cnty. Sch. Bd.*, 757 F.3d 1173 (11th Cir. 2014), that the Eleventh Circuit "specifically blended" State and LEA requirements. Dkt. 10.1 at 34. In the footnote, the court stated that it used "state" in the opinion to "refer to the agency charged with providing a child's education." *R.L.*, 757 F.3d at 1177 n.1. Contrary to Appellants' contention, the court's use of the term "state" for efficiency purposes does not mean it intended to alter the statutorily defined responsibilities of the separate entities. Appellants further argue that courts "frequently" combine the requirements of Sections 1412 and 1413, citing to one sentence in *E. Ramapo Cent. Sch. Dist. v. DeLorenzo*, No. 13-CV-1613 CS, 2013 WL 5508392 (S.D.N.Y. Oct. 3, 2013). Dkt. 10.1 at 34-35. To the contrary, the court simply cited both when describing the State's supervisory authority over school districts and the agencies' respective responsibilities under the IDEA. *DeLorenzo*, 2013 WL 5508392, at *2.

Appellants further claim that "blending" State and LEA requirements is consistent with Washington law, which "treats school districts as only 'quasi-municipal' corporations" that are "mere arms of the state for the administration of its school system." Dkt. 10.1 at 35. Appellants' contention relies on *Bellevue Sch. Dist. No. 405 v. Brazier Const. Co.*, 675 P.2d 232 (Wash. 1984), a case that did not

involve IDEA claims, but instead the building and maintenance of school buildings. *Id.* In that context, the court referred to school districts as "mere arms of the state," yet it distinguished between the separate entities and their respective obligations throughout the decision. Moreover, Appellants' argument is inconsistent with the IDEA itself, which defines States and LEAs as separate entities. 20 U.S.C. §§ 1401(19), (31).

Appellants lastly advance the unremarkable claim that LEAs are "equally required to comply with federal law as they are to state law." Dkt. 10.1 at 35. The District again does not dispute this. Indeed, it is the District's position that it did just that in complying with Section 1413 and Washington law regarding the age of eligibility for services.

3. <u>Washington's IDEA Regulations Contain the Same State and LEA Responsibilities Set Forth in the IDEA.</u>

Appellants next assert that Washington's "policies and procedures established pursuant to [Section] 1412 undisputedly and explicitly" require school districts to "have policies that are consistent with federal law." Dkt. 10.1 at 36. But again, what federal law requires in this case is that the District's policies and procedures with respect to the age of eligibility for special education services be consistent with those of Washington. 20 U.S.C. §§ 1412(a)(1)(A), 1413(a)(1). Nothing in the single Washington regulatory provision Appellants cite changes this analysis. Instead, Wash. Admin. Code § 392-172A-06000 merely restates the same

requirements set forth in the IDEA and its federal implementing regulations regarding the respective obligations of States, SEAs and LEAs.

Specifically, this regulation states that Washington LEAs must provide Washington's SEA assurances that the "school district . . . meets each of the conditions contained in 34 C.F.R. 300.201 through 300.213 relating to: (a) Development of policies and procedures consistent with this chapter and Part B of the act." Wash. Admin. Code § 392-172A-06000(1)(a). 34 C.F.R. § 300.201 reiterates Section 1413's requirement that LEAs "have in effect policies, procedures, and programs that are consistent with" those of their State, including those addressing the age of eligibility for special education services. 34 C.F.R. § 300.201 (referencing the LEA's obligation to have policies, procedures, and practices consistent with *inter alia* 34 C.F.R. §§ 300.101 and .102); 34 C.F.R. § 300.101 (setting forth age of eligibility for services); 34 C.F.R. § 300.102 (setting forth exception to FAPE requirement for certain ages). Thus, Wash. Admin. Code § 392-172A-06000 is nothing more than Washington's regulatory codification of the same requirements that exist in Sections 1412 and 1413.

Appellants argue that the reference in Wash. Admin. Code § 392-172A-06000 to "Part B of the act" means that the requirement of 20 U.S.C. § 1412(a)(1)(A) with respect to the age of eligibility for services applies directly to

LEAs. Dkt. 10.1 at 36.[11] This argument is in substance the same as that addressed above in response to Appellants' legislative history argument, and it fails for the same reasons. *See* Sec. VIII.B.2.b. *supra*. Nothing in Wash. Admin. Code § 392-172A-06000 purports to either permit or require Washington school districts to enact their own policies regarding at what ages they will offer students special education services. Appellants' arguments to the contrary fail.

### C. The District Properly Complied with State Law When it Exited S.P. from Special Education Services at the End of the School Year in which She Turned 21.

Appellants next take a different tack to argue that the District denied S.P. a FAPE when it followed existing State law to exit her from special education services at age 21. Dkt. 10.1 at 37-40. This time, Appellants reiterate the same arguments their counsel raised against the State in the *N.D.* litigation in arguing that Washington's policy of exiting students at age 21 violated the IDEA. *Compare Id.* at 37-39, *with* 2-ER-85-86.[12] But this Court has already determined that

---

[11] Appellants made a similarly unavailing argument before the district court, there citing to a different Washington regulatory provision defining the term "free appropriate public education." 2-ER-34-35 (citing Wash. Admin. Code § 392-172A-01080). Appellants claimed that because that provision defined a FAPE as educational services that "[m]eet the standards of the OSPI, and the act," this meant the District was obligated to comply with Section 1412(a)(1)(A). *Id.* (emphasis added). Appellants have abandoned this argument in favor of this similarly meritless contention.

[12] It is telling that the first discussion of the IDEA's mandates regarding the age of eligibility for services, and the exception to the requirement to serve students over age 21, comes only on page 38 of Appellants' brief.

Washington could not rely on the exception in 20 U.S.C. § 1412(a)(1(B)(i) to exit students at age 21 because the State offered two programs that provided "free" educational services to non-disabled 21-year-olds. *N.D.*, 102 F.4th at 994. Thus, there is no dispute that this law is no longer in effect, and Appellants' extensive arguments regarding its legality are irrelevant.

Turning to Appellants' next argument, there also is no dispute that the District exited S.P. from special education services in June 2023 at the conclusion of the school year in which she turned 21. *See* Dkt. 10.1 at 40-43. The District did so because Washington law in effect at the time provided that special education services terminated at this age. Wash. Rev. Code § 28A.155.020 (2015) (amended 2025); Wash. Admin. Code § 392-172A-02000. Although Appellants devote substantial attention to arguing that the services the District offered to S.P. after she turned 21 were compensatory, the reason for doing so is unclear as this matter has never been in dispute. Dkt. 10.1 at 40-42; 2-ER-49; 2-ER-68. Rather, the District has consistently taken the position that it did not have an obligation to develop an IEP for S.P. during the 2023-2024 school year under then-existing Washington law. *Id.*; 2-ER-228 (prior written notice stating that the 2023-2024 school year services are compensatory). Although Appellants contend that "it undisputed [sic] as a matter of law that the District failed to meet its obligations under the IDEA" in this respect, this is far from true. Dkt. 10.1 at 42. Rather, as the

District has explained at every level of these proceedings, it did what the IDEA required, and Appellants' arguments to the contrary fail.[13] 2-ER-12-26; 2-ER-44-70; 2-ER-273-79; 2-ER-313-16. Specifically, Appellants contend that the District could not rely on existing State law to exit S.P. from services in June 2023 because 1) the IDEA preempted the applicable State law, and 2) "the outcome" of *N.D.* "must be applied retroactively." Dkt. 10.1 at 43. Neither argument has merit.

1. The Preemption Doctrine is Inapplicable.

Appellants first argue that this Court should determine that "a conflict exists between state and federal law" and "hold the District accountable for violating that federal law." Dkt. 10.1 at 44. Appellants further contend that the District was "at all times required by *federal law* to provide a FAPE until S.P.'s twenty-second birthday." Dkt. 10.1 at 47 (emphasis original). But, as set forth above, federal law instead required the District to follow the State's policy in this respect, which ceased the provision of special education services at age 21. 20 U.S.C. § 1412(a)(1); 20 U.S.C. § 1413(a)(1); Wash. Rev. Code § 28A.155.020 (2015) (amended 2025); Wash. Admin. Code §§ 392-172A-02000(1), (2)(c).

[13] Appellants further claim that S.P. was "deprived of the educational benefits she was entitled to" as a result of being exited from services at age 21 pursuant to State law. Dkt. 10.1 at 42. But as set forth above, S.P. is already entitled to the relief she seeks in this case as a member of the *N.D.* settlement class. The District is not responsible for Appellants' decision to decline access to this remedy.

Appellants' lengthy discussion of preemption principles and authority does not change this analysis.[14] There has never been a determination that the IDEA preempted Washington's policy regarding the age of eligibility for services, nor any basis for the Court to conclude as such in this case. Rather, the question this Court resolved in *N.D.* was whether Washington could rely on the exception in 20 U.S.C. § 1412(a)(1)(B)(i) to cease providing special education services at age 21 despite offering two State programs that provided "free" educational services to non-disabled 21-year-olds. 102 F.4th at 994. This Court concluded that it could not. *Id.* It did not, however, conclude that the IDEA "preempted" Washington law in this respect. *Id.* And given that the Court has already resolved the question of the legality of Washington's law and policy, Appellants' belated claim that this law is preempted is moot. *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (holding that claim is moot "where no actual or live controversy exists").

Even were preemption principles applicable in determining the legality of the State's policy regarding age of eligibility for services, they have no application with respect to the District's statutory obligations here. Appellants' arguments that

[14] In addition to the *Maher*, *R.B.* and *Hacienda* cases discussed above, Appellants also cite to *M.R. v. Yelm Sch. Dist.*, Case No. 3:24-cv-05533 (W.D. Wash. March 11, 2025) to support their preemption argument. Dkt. 10.1 at 45-46; *see also* Dkt. 10.2 at 56-97. There, the court found that if the district's compliance with a Washington State residency statute conflicted with its obligations under the IDEA's stay-put provision, the State law was preempted. Dkt. 10.2 at 82. That is not the scenario here. Rather, the District complied with the federal law applicable to it by complying with the State's policy regarding the age of eligibility.

the District "fail[ed] to comply with federal law" and was "required *by federal law* to provide a FAPE until S.P.'s twenty-second birthday" rest on a misunderstanding of what federal law required of the District in this context. Dkt. 10.1 at 47 (emphasis original). Rather than arguing that the District was required to follow federal law, Appellants' argument is instead that the District was required to ignore the requirements placed upon it under Section 1413. Appellants cite no authority that would have permitted the District to do so. Nor did the District have any basis to believe that Washington's law violated the IDEA as it was not responsible for administering either of the programs identified in *N.D.* as offering free educational services to students over age 21. *N.D.*, 102 F.4th at 988 (finding that the State created a system of community and technical colleges that offered the two adult-education programs). Appellants' argument further ignores that, at the time the District exited S.P. from services, OSPI was defending its policy in the *N.D.* litigation on the ground that it did not provide "free" educational services to non-disabled students. *Id.* at 988-89 (reciting procedural history). Absent a judicial ruling that Washington law violated the IDEA and could no longer be enforced, the IDEA required the District to follow State law as it existed in June 2023 when it exited S.P. from services. It was thus not "impossible" for the District to comply with both Section 1413 and Washington law—that is instead what it did. Dkt. 10.1

at 47. As with the arguments addressed above, Appellants' preemption argument ignores the IDEA's plain terms in this respect.

2. Appellants' Retroactivity Argument is without Basis.

Appellants next argue that the *N.D.* ruling that OSPI violated the IDEA "applied retroactively to school districts." Dkt. 10.1 at 48. Appellants cite no language in the ruling that supports their argument. In its July 2024 declaratory judgment, the *N.D.* district court found that the State's policy violated Sections 1407 and 1412(a)(11) of the IDEA. 2024 WL 3358743, at *6. The court did not, however, conclude that Washington's school districts were also liable for the State's legal violation. Nor would there be any basis to do so, as Sections 1407 and 1412 do not apply to LEAs.

The District does not dispute that judicial decisions can be given retroactive effect. But none of the cases Appellants cite establish that a ruling regarding a State's violation of statutory provisions applicable only to States somehow retroactively applies to a non-State entity. For example, in *Harper v. Virginia Dep't of Tax'n*, the Supreme Court held that its ruling that a Michigan tax scheme was unconstitutional applied retroactively to a case before it regarding a similar tax scheme in Virginia. 509 U.S. 86, 97 (1993). Thus, unlike here, that holding was based on a constitutional provision equally applicable to both States.

Appellants lastly contend that, based on *N.D.*'s interpretation of Section 1412(a)(1)(B)(i), the District was required provide S.P. with special education services until age 22 because "that is what the law has always required." Dkt. 10.1 at 49. But what the law has always required of the District is to comply with State policies and procedures regarding the age of eligibility for services, which is what the District did. Appellants' arguments to the contrary are without merit.

## IX. CONCLUSION

Appellants have failed to meet their burden of establishing the district court erred in deciding the issues on appeal. This Court should affirm the district court's decision.

DATED this 18th day of March, 2026.

PACIFICA LAW GROUP LLP

By: */s/ Sarah C. Johnson*
Sarah C. Johnson, WSBA #34529
Susan B. Winkelman, WSBA #45955
*Attorneys for Defendant-Appellee Seattle Public Schools*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** 25-6624

The undersigned attorney or self-represented party states the following:

◉ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

○ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** /s/ Sarah C. Johnson **Date** 3/18/2026

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-6624

I am the attorney or self-represented party.

**This brief contains** 12,109 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.
- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- ( ) complies with the length limit designated by court order dated ____________.
- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Sarah C. Johnson **Date** 3/18/2026

*(use "s/[typed name]" to sign electronically-filed documents)*