**No. 25-6624**

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

S.P., by and through her guardians C.P. and D.P.,
Plaintiffs - Appellants,
v.
SEATTLE PUBLIC SCHOOLS, a quasi-municipal corporation,
Defendants - Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON
2:25-cv-00286-BJR
(Honorable Barbara J. Rothstein)

## APPELLANTS' REPLY BRIEF

Alex Hagel
Lara Hruska
CEDAR LAW LLP
600 1st Ave., Ste 330, PMB 96563
Seattle, WA, 98104-2246

*Counsel for Appellants*

# Table of Contents


Table of Contents ........ i

Table of Authorities ........ iii

I. INTRODUCTION ........ 1

II. UPDATED STATUTORY ADDENDUM ........ 2

III. ARGUMENT ........ 3

1. SSD is a proper defendant because it is the entity that denied S.P. a FAPE. ........ 3

2. The IDEA Does Not Excuse SSD's Termination of Services. ........ 5

   a. Section 1413 does not create a safe harbor for LEAs that deny federally required services. ........ 5

   b. The District's reading cannot be reconciled with the IDEA's intent and structure. ........ 6

3. The District's legislative-history does not establish that SSD is beyond reach. ........ 8

4. The District's case law arguments do not establish state-only liability. ........ 11

5. Washington's own regulations require compliance with the relevant portions of the IDEA. ........ 14

6. SSD cannot rely on Washington's former age-out rule to defeat Appellants' federal claim. ........ 17

7. *N.D.* did not create S.P.'s right; it recognized it. ........ 19

8. The N.D. settlement does not extinguish S.P.'s individual claim. ........ 20

IV. CONCLUSION ........ 23

CERTIFICATE OF COMPLIANCE ........................................................ 25
CERTIFICATE OF SERVICE ................................................................ 26

## Table of Authorities

### Cases

*Corey H. v. Bd. of Educ. of City of Chicago,*
995 F. Supp. 900 (N.D. Ill.1998) ........................................ 4, 12,13

*Doe by Gonzales v. Maher,*
793 F.2d 1470 (9th Cir. 1986) ........................................ 18, 19

*Endrew F., v. Douglas County School Dist. RE-1,*
580 U.S. 386 (2017) ........................................ 7

*Hacienda La Puente Unified School Dist. of Los Angeles v. Honig,*
976 F.2d 487 (9th Cir. 1992) ........................................ 18, 19

*Harper v. Virginia Dept. of Taxation,*
509 U.S. 86 (1993) ........................................ 20

*Honig v. Doe,*
484 U.S. 305 (1988) ........................................ 19

*Jose P. v. Ambach,*
669 F.2d 865 (2nd Cir. 1982) ........................................ 4, 11, 12

*Mutual Pharmaceutical Co., Inc. v. Bartlett,*
570 U.S. 472 (2012) ........................................ 35, 38

*N.D. v. Reykdal,*
102 F.4th 982 (9th Cir. 2024) ........................................ passim

*N.D. v. Reykdal,*
2:22-cv-016121-LK, 2025 WL 1736639 (W.D. Wash. June 23, 2025)
........................................ 2, 21

*N.D. v. Reykdal,*
No. 2:22-cv-01621-LK, 2025 WL 675323, at *2 (W.D. Wash. March
10,
2026) ........................................ 21

*R.L. v. Miami-Dade County School Bd.*,
757 F.3d 1173 (11th Cir. 2014) .......... 10

*Rivers v. Roadway Exp., Inc.*,
511 U.S. 298 (1994) .......... 20

*U.S. v. City of Tacoma, Wash.*,
332 F.3d 574 (9th Cir. 2003) .......... 20

**Statutes**

20 U.S.C. § 1412 .......... passim
20 U.S.C. § 1413 .......... passim
20 U.S.C. § 1415 .......... passim

**Regulations**

34 C.F.R. 300 et. seq. 15, 16,17
Wash. Admin. Code 392.172A.06000 27, 28

# I. INTRODUCTION

Seattle Public Schools exited S.P. exited from special education before her twenty-second birthday. The District made that decision, implemented it, and denied her the year of services she otherwise would have received. The District's answer is not that S.P. received a FAPE through her twenty-second birthday. It is that the District should not be accountable because Washington's then-existing age-out policy told it to do the same thing. The IDEA provides no such immunity. Opening Br. at 1–3, 12–15. In adopting this finding, the lower courts erred.

The District asks this Court to take on a proposition that the IDEA does not contain: The District cannot be liable because the claim challenges a State age-eligibility policy that the District was required to follow under its reading of the IDEA. That is not the statute Congress wrote, and it is not a rule any cited case supports. This appeal should not be obscured by the District's reframing.

The District also attempts to convert two collateral points into complete defenses. First, it argues that because *N.D. v. Reykdal* was litigated against OSPI, only the State may ever be responsible for the denial at issue here. But the fact that the State may be liable for

maintaining an unlawful statewide policy does not mean the school district that actually denied services is not also a proper defendant in a due process complaint. Second, it argues that the later *N.D.* settlement supplied S.P. with a remedial avenue and therefore renders this case unnecessary. But the settlement expressly preserved individual suits and cannot be transformed into a merits defense for the District. *N.D. v. Reykdal*, No. 2:22-cv-01621-LK, 2025 WL 1736639, at *11 (W.D. Wash. June 23, 2025); Opening Br. at 8–9.

At bottom, the District seeks to turn unlawful compliance with state policy into a defense under federal law. But the IDEA protects students. S.P. was entitled to services through her twenty-second birthday. The District exited her early. That denial is actionable, and the order below should be reversed. 20 U.S.C. § 1415(b)(6).

## II. UPDATED STATUTORY ADDENDUM

S.P. notes that the Addendum filed with their Opening Brief included outdated versions of the relevant statutes. With Appellee's counsel's consent, S.P.  submits an updated Addendum with the current statutes alongside this Reply. Although the Addendum was outdated, the actual language cited in the Opening Brief was accurate and does

not affect the substance of S.P.'s arguments.

## III. ARGUMENT

### 1. SSD is a proper defendant because it is the entity that denied S.P. a FAPE.

The District's threshold argument is to warp this appeal as if it were nothing more than a challenge to Washington's age-out policy against the wrong defendant. But that elides the posture of this case. This is an appeal of an individual due process complaint against the school district that *actually* exited S.P. from special education before her twenty-second birthday. The District was the entity responsible for providing S.P.'s services, the entity that stopped those services, and the entity against which Congress authorized a complaint regarding "any matter relating to . . . the provision of a free appropriate public education." 20 U.S.C. § 1415(b)(6)(A); 20 U.S.C. § 1415(f)(3)(E)(i); Opening Br. at 13–15.

The District conflates two separate propositions: that OSPI may be liable for maintaining an unlawful statewide policy, and that SSD may be held liable for implementing that policy against S.P. Those propositions are not mutually exclusive. The authorities discussed in Appellants' opening brief recognize that state and local entities may

both bear responsibility under the IDEA depending on the nature of the violation. Opening Br. at 15. Yet the District cites no authority where a school district that actually denied a student a FAPE is not a proper defendant in a due process complaint simply because the challenged action implemented a State age-eligibility policy. *Jose P. v. Ambach*, 669 F.2d 865, 870–71 (2d Cir. 1982); *Corey H. v. Bd. of Educ. of City of Chicago*, 995 F. Supp. 900, 904–05, 918 (N.D. Ill. 1998); Opening Br. at 14–18.

The cases the District cites only show that State Educational Agencies (SEAs) are proper defendants in actions challenging systemic violations or statewide policies. They do not establish that Local Educational Agencies (LEAs) are improper defendants when they actually deny services to an individual student. That gap is fatal to the District's threshold argument. If Congress intended to carve school districts out of due process liability whenever they relied on state law, one would expect the IDEA to expressly say so. It does not.

Indeed, the District's own brief concedes that Section 1415 imposes procedural obligations on both SEAs and LEAs. Answering Br. at 20 n.5. This undermines its effort to treat this case as though only

the State mattered. The IDEA's procedural safeguards exist precisely because local districts are the entities that provide, revise, and sometimes terminate services for particular students. The District cannot be recast as a mere bystander to its own decision to exit S.P.

### 2. The IDEA Does Not Excuse SSD's Termination of Services.

#### a. Section 1413 does not create a safe harbor for LEAs that deny federally required services.

The District's merits theory falls on its reading of Section 1413. In the District's version, Section 1412 governs States and Section 1413 requires only that LEAs maintain policies "consistent with" state policies, thus the District could not be liable for following a rule that conflicted with federal law. *See* Answering Br. at 28–35. But Section 1413 does not say that an LEA's obligation to maintain policies "consistent with" State policy eliminates a parent's ability to challenge the LEA's denial of services in a due process complaint. *See* 20 U.S.C. § 1413(a)(1).

Section 1413 speaks in terms of LEA funding eligibility. *Id.* It provides that an LEA is eligible for assistance if it has in effect policies, procedures, and programs consistent with the State's policies and procedures established under Section 1412. *Id*. However, it does not

answer the separate question of whether the District may rely on State law to defeat a claim that it denied a FAPE to S.P. . *See id.* Nor does it establish that only the State may be answerable where an LEA implements a State age-out rule. *See id.* Nor it does not repeal or narrow the separate right Congress created in Section 1415 to challenge "any matter" relating to the provision of FAPE. 20 U.S.C. § 1415 (b)(6).The District also argues that a plaintiff invoking Section 1415 still must articulate a viable claim against the opposing party. And that is exactly what S.P. has done. The District exited her from special education while she was still eligible for and entitled to special education. Opening Br. at 6. That is a direct challenge to the District's denial of FAPE. Answering Br. at 22–23; Opening Br. at 12–18.

**b. The District's reading cannot be reconciled with the IDEA's intent and structure.**

S.P.'s reading harmonizes the statute. Section 1412 sets forth the assurances a State must make to receive IDEA funding. *See* 20 U.S.C. § 1412 (State eligibility). Section 1413 imposes separate funding-eligibility requirements on LEAs. *See* 20 U.S.C. § 1413 (Local educational agency eligibility). Section 1414 governs evaluations, IEPs, and educational programming. *See* 20 U.S.C. § 1414. Section 1415

provides procedural safeguards and the mechanism for parents to challenge denials of FAPE. 20 U.S.C. § 1415 (Procedural safeguards). As the Supreme Court recognized, when read together, the IDEA "establishes a substantive right to a 'free appropriate public education' for certain children with disabilities." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1,* 580 U.S. 386, 390, 137 S. Ct. 988, 993, 197 L. Ed. 2d 335 (2017). And by the District's own actions, S.P. was denied that substantive right when they prematurely exited her. Those provisions do not create broad immunity for school districts whenever a denial of services traces back to a state policy. They reflect the ordinary reality that States supervise the system while school districts provide the services. 20 U.S.C. §§ 1412–1415; Opening Br. at 18–21.

Contrary to the District's argument, S.P.'s position would not create "absurd results" because every school district would have to adopt its own interpretation of federal law. Answering Br. at 15–16, 30. School districts interpret and apply federal IDEA requirements every day—when determining eligibility, drafting IEPs, choosing placements, conducting reevaluations, and complying with stay-put and other procedural protections. *See* 20 U.S.C. § 1414; § 1415. S.P. is not asking

districts to invent their own federal regime. They ask only that a district not be permitted to use contrary state law as a complete defense after denying services federal law guarantees to disabled students.

The District's rule is the one that would produce untenable results. Under its theory, parents may challenge "any matter" relating to FAPE except when the school district says the State told it to deny services. That would convert Section 1415's broad procedural safeguard into a narrow remedy that evaporates whenever the denial stems from state policy. Congress did not write such an exception into the statute, and this Court should not supply one.

**3. The District's legislative-history does not establish that SSD is beyond reach.**

The District next argues that legislative history is irrelevant because Section 1413 is unambiguous, and that, in any event, the history supports its position. Answering Br. at 35–38; *Avila v. Spokane Sch. Dist. 81*, 852 F.3d 936, 941 (9th Cir. 2017). But again, the statute does not say LEAs are immune from liability so long as they are following a contradictory state policy. Therefore, review of the legislative and statutory history is necessary to understand the contours and interplay between § 1412 and § 1413.

S.P.'s opening brief explained that the predecessor EHA language tied LEA eligibility to consistency with the underlying statutory requirements, and that the 1997 amendments reorganized, rather than eliminated, LEA compliance obligations. Opening Br. at 23–26. The District responds that S.P.'s reading would have required LEAs to "comply" with every state-only obligation, such as submitting a State plan. Answering Br. at 36–37. But that slippery slope ignores the structure of 20 U.S. Code § 1412. § 1412(a) requires states to submit plans "that provides assurances… [that it] has in effect policies and procedures to ensure that the State meets each of the following conditions..." As the legislative and statutory history of § 1413 shows, it is both the "following conditions" (i.e. 20 U.S.C § 1412(a)(1)(A)) and the state policies and procedures that LEAs are required to comply with. S.P.'s argument has always been that Congress required LEAs to comply with the underlying state obligations, not just the state created policies. The requirement to submit a state plan sits above (both metaphorically and textually) the underlying FAPE obligations guaranteed to all students and imparted onto the LEAs by virtue of their obligation to provide students with a FAPE.

The District's reliance on Senate Report language about central state responsibility proves only that Congress expected States to bear supervisory responsibility for ensuring compliance. *See* Answering Br. at 36. It does not mean that local districts, who do the "on-the-ground work for individual students," become immune from due process challenges when they themselves deny services. S. Rep. No. 94-168 at 24 (1975); *R.L. v. Miami-Dade Cnty. Sch. Bd.*, 757 F.3d 1173, 1177 n.1 (11th Cir. 2014).

Nor do the 1997 amendments do what the District assigns them. The fact that Congress consolidated SEA eligibility provisions in Section 1412 and LEA eligibility provisions in Section 1413 says nothing about whether a parent may sue the local district that denied FAPE. And again, in explaining that consolidation, the House Report is clear: "the following provisions are retained without substantive alteration: … compliance with part B of the IDEA *and* State requirements associated with it…" H.R. Rep. 105-95 at 93 (emphasis added). Instead, the answer to that question is found not merely in Sections 1412 and 1413, but in the IDEA as a whole—and especially in Section 1415's authorization of complaints regarding the provision of FAPE. H.R. Rep. No. 105-95 at 84

(1997); 20 U.S.C. § 1415(b)(6)

**4. The District's case law arguments do not establish state-only liability.**

While courts have recognized that state educational agencies are proper defendants in cases challenging statewide IDEA policies or systemic failures That is not the issue presented here. The issue is not whether OSPI could have been sued over Washington's age-out policy – obviously they could. *See N.D.*, 102 F.4th 982. The issue is whether the District is therefore insulated from liability in a due process complaint challenging SSD's own termination of S.P.'s services.

The District's cited authorities do not establish that broader proposition. Answering Br. at 24–25. The District cites *Jose P. v. Ambach*, 669 F.2d 865, 867, 870–71 (2d Cir. 1982) to argue that state and local entities are liable only for IDEA provisions that apply to them. But *Jose P.* did not hold that state-level responsibility displaces local responsibility. Quite the opposite: the Second Circuit affirmed relief against both the local and state defendants, explaining that the City bore the "primary responsibility" while the Commissioner also bore responsibility for failure to enforce federal and state law. *Jose P.*, 669 F.2d at 870–71. The District may be correct that *Jose P.* arose in a

different factual setting. But different facts do not transform *Jose P.* into authority for the rule the District needs here—namely, that an LEA that actually terminated a student's services cannot be sued so long as it acted pursuant to state policy. The case does not say that.

The same is true of *Corey H*. The District cites *Corey H. v. Bd. of Educ. of City of Chicago*, 995 F. Supp. 900, 905–06, 907, 909, 912–14 (N.D. Ill. 1998) to emphasize that SEAs bear supervisory responsibility for ensuring LEA compliance with the IDEA. S.P. does not dispute that point. But *Corey H*. did not hold that LEAs are improper defendants whenever the challenged conduct is connected to a state policy. It was a case in which the court examined whether the state educational agency could also be held liable *in addition to* the local entity. *Corey H.,* 995 F. Supp. at 909. In determining whether the City was liable for violating the IDEA, the district court specifically referenced the fact that "the CBE failed to comply with the LRE mandate due to lack of resources, inadequate training and certification of teachers, community attitudes, **and (as more fully discussed below) State regulations and funding formulas** that contradict the notion of educating children with disabilities in the least restrictive environment." *Corey H*, 995

F.Supp. at 908. Rather than giving the City a free pass for simply complying with state regulations, the court explicitly relied on that to find them liable. *Id.* As the District described it, the court in *Corey H.* acknowledged the Chicago LEA's failure to comply with the least restrictive environment mandate and then held the Illinois SEA was also liable. Answering Br. at 26. Notably, the obligation to serve students in their "least restrictive environment" arises from the very same section (§ 1412(a)(5)) as the obligation to serve students until their twenty second birthday (§ 1412(a)(1)(a)). That supports the proposition that state responsibility may exist alongside local responsibility; it does not support a rule of state-only liability.

None of the authorities the District actually cites to hold that an LEA that terminated a student's IDEA services is immune from liability because state law required that result. *Corey H.* held to the contrary, and the rest, at most, establish that States may also be proper defendants alongside LEAs.

That gap matters. The District has not cited a single case holding that a school district may terminate an individual student's IDEA services, then avoid due process liability altogether by saying state

policy required it. The absence of such authority is not surprising. Section 1415 authorizes parents to challenge "any matter relating to . . . the provision of a free appropriate public education," and SSD was the entity that actually stopped providing S.P.'s services. 20 U.S.C. § 1415(b)(6)(A). The fact that OSPI may also have been responsible for maintaining the underlying statewide policy does not mean the District is beyond reach in this action.

### 5. Washington's own regulations require compliance with the relevant portions of the IDEA.

Even if this Court were to conclude that LEAs need only comply with "State policies and procedures" as a general matter under Section 1413, the District still cannot prevail because Washington's own regulations require school districts to submit assurances that their policies are consistent with Part B of the IDEA. Wash. Admin. Code § 392-172A-06000(1)(a); Opening Br. at 28–29.

Under Washington law, "the primary objective of statutory interpretation is to discern and implement legislative intent." *Bennett v. Seattle Mental Health,* 150 Wash. App. 455, 460, 208 P.3d 578, 580 (2009)*, review granted, cause remanded,* 169 Wash. 2d 1029, 241 P.3d

1220 (2010). Courts "must give meaning to every word in a statute and presume the legislature did not use any superfluous words." *Id.* "When interpreting an administrative regulation, [Courts] follow the general rules of statutory construction." *Yaron v. Conley,* 17 Wash. App. 2d 815, 825, 488 P.3d 855, 861 (2021). "To this end, [Courts] interpret administrative rules and regulations 'as a whole, giving effect to all the language and harmonizing all provisions.'" *Id.*

The regulation at issue–Wash. Admin. Code § 392-172A-06000(1)(a)–requires that the school district develops "policies and procedures consistent with this chapter *and Part B* of the act." Wash. Admin. Code § 392-172A-06000(1)(a) (emphasis added)[1]. Part B of the IDEA refers to the entirety of 20 U.S.C. §§ 1411 through 1419, the statutory provisions governing 'Assistance for Education of All Children

---

[1] In relevant part, WAC 392-172A-06000 reads "As a condition of receipt and expenditure of federal special education funds, a school district or other public agency shall annually submit a request for federal funds to the OSPI, and conduct its special education and related services program in compliance with the requirements of this chapter. The request shall be made through an application that includes, but is not limited to, the following assurances and types of information: (1) Assurances that: The school district or other public agency meets each of the conditions contained in 34 C.F.R. 300.201 through 300.213 relating to: (a) Development of policies and procedures consistent with this chapter and Part B of the act;…"

with Disabilities,' including the funding and compliance framework at issue here. Thus, to comply with Wash. Admin. Code § 392-172A-06000(1)(a), the District was required to have in place policies that comply with Part B, which necessarily includes the underlying requirements of 20 U.S.C. § 1412.

Why? Because any other reading would render reference to "Part B" superfluous. Wash. Admin. Code § 392-172A-06000(1) already references compliance with 34 C.F.R. 300.201, the regulation that implements 20 U.S.C. § 1413 – "Consistency with State Policies." If the regulations intended for LEAs to only have to comply with the District's interpretation of 20 U.S.C. § 1413, reference to 34 C.F.R. 300.201 would have been sufficient.

But the regulation goes further and explicitly references Part B – requiring policies and procedures "consistent with this chapter and Part B of the act." *Id.* A school district policy that ages students out of special education prior to turning 22 is not "consistent" with Part B of the Act. Put another way, if LEAs only had to be consistent with State Policies under Washington law (as the District argues), there would be no need to reference "Part B," as that requirement is already covered by the

reference to 34 C.F.R. 300.201. In essence, the District asks this Court to read out reference to Part B in the state regulation. The Court should reject that offer.

Thus, contrary to the District's arguments, Washington law did not require the District to do what federal law prohibited. At a minimum, the Washington regulations show this case is not simply about a school district mindlessly obeying a contrary state command. Washington's own IDEA implementation framework anticipated the District's compliance with Part B. *See* Wash. Admin. Code § 392-172A-06000(1)(a).

**6. The District cannot rely on Washington's former age-out rule to defeat Appellants' federal claim.**

The District next argues that S.P.'s preemption analysis fails because, in its view, the IDEA itself required the District to follow Washington's then-existing age-out regime. Answering Br. at 45–47. That argument simply repackages the same flawed statutory premise.

As S.P. explained in the opening brief, *N.D.* held that Washington could not invoke Section 1412(a)(1)(B)(i) because it continued to provide free public education to nondisabled 21-year-olds. *N.D.*, 102 F.4th at 994; Opening Br. at 29–35. Thus, federal law required S.P.'s services to

continue until age twenty-two. A contrary state statute or regulation could not narrow that federal entitlement.

The District insists it lacked any basis in June 2023 to believe Washington law violated the IDEA because OSPI was still defending that law in *N.D.* and because the District itself did not administer the adult-education programs discussed in *N.D.* Answering Br. at 47–48. But a State's litigation position does not define the meaning of federal law. Nor does a district's lack of responsibility for the statewide programs identified in *N.D.* change the nature of the entitlement at issue. The question is not who operated those programs. The question is whether Washington, as a State, could deny disabled 21-year-olds IDEA services while continuing to provide free public education to nondisabled students of the same age. *N.D.* answered that question no.

The cases cited in S.P.'s opening brief reinforce the broader preemption principle. *Maher*, *Hacienda La Puente*, and *Mastery Charter* reject the notion that a school district may rely on contrary state law when federal IDEA obligations say otherwise. *Doe by Gonzales v. Maher*, 793 F.2d 1470, 1486 (9th Cir. 1986), aff'd in relevant part by *Honig v. Doe*, 484 U.S. 305 (1988); *Hacienda La Puente Unified Sch. Dist. of Los Angeles v.*

*Honig*, 976 F.2d 487, 493 (9th Cir. 1992); *R.B. v. Mastery Charter Sch.*, 532 F. App'x 136, 142 (3d Cir. 2013); Opening Br. at 36–39. The relevance of these cases lies in the principle they reject: that compliance with state law defeats federal IDEA liability. It does not.

**7. *N.D.* did not create S.P.'s right; it recognized it.**

The District's retroactivity discussion creates a strawman argument. S.P. does not contend that the judgment in *N.D.* automatically imposed party-specific liability on every school district in Washington. Rather, *N.D.* clarified what federal law already required in Washington. Answering Br. at 48–49; Opening Br. at 40–42.

Once this Court held that Washington could not deny disabled 21-year-olds IDEA services while providing free public education to nondisabled students of that same age, it necessarily followed that S.P. was entitled to services through her twenty-second birthday when SSD exited her in June 2023. *N.D.*, 102 F.4th at 994. That is not a theory of retroactively extending a State-only judgment to a stranger. It is the ordinary consequence of a judicial interpretation of federal law.

That is why S.P. cited *Harper*, *Rivers*, and *City of Tacoma*. Those cases matter for a simple reason: when a court announces the

controlling meaning of federal law, that is the law courts apply in cases still under review. The District cannot wall off this case by insisting that the State was the named defendant in *N.D.* and therefore nothing changed for anyone else. What changed was the authoritative understanding of federal law in Washington.

The District's retroactivity argument ultimately just repackages its statutory defense. It says that, regardless of what *N.D.* established about Washington's obligations, the District's own duty was only to follow then-existing State policy. But that is the merits dispute, not an answer to retroactivity. Once *N.D.* established the federal entitlement at issue, the District still had to defend its own decision to exit S.P. before her twenty-second birthday. It cannot sidestep that question. The source of the right was federal law. *N.D.* just said what that law meant.

**8. The N.D. settlement does not extinguish S.P.'s individual claim.**

The District repeatedly emphasizes that S.P. was a member of the N.D. settlement class, that she was offered an IEP-team process for compensatory education through the N.D. settlement, and that she did not pursue that process. But the *N.D.* settlement did not bind students

and expressly preserved individual lawsuits. *See N.D. v. Reykdal*, No. 2:22-cv-01621-LK, 2025 WL 1736639, at *11 (W.D. Wash. June 23, 2025); Opening Br. at 9. The *N.D.* District Court recently reaffirmed this very point. *N.D. v. Reykdal*, No. 2:22-cv-01621-LK, 2025 WL 675323, at *2 (W.D. Wash. March 10, 2026) ("Again, the class settlement did not release any individual claims, and C.B. is free to challenge OAH's decision in the appropriate way. *See, e.g.*, Dkt. No. 135-1 at 28 ('Right to Bring a Civil Action Under The IDEA')"). A settlement that preserves individual claims cannot simultaneously be transformed into a merits defense for SSD. At most, the settlement bears on remedy administration—whether relief should be coordinated to avoid duplication, or how compensatory education should be structured. It does not extinguish the underlying claim that SSD denied S.P. a FAPE.

If this Court followed the District's position, whenever a statewide settlement offers some remedial process, the LEA that actually denied services would be allowed to evade responsibilities for its own IDEA violations because the parent should instead pursue the separate class process. Nothing in the IDEA or the *N.D.* orders supports that result. Nor does the fact that S.P.'s counsel also represented the *N.D.* plaintiffs

change the analysis.

The preservation-of-claims language is clear: Washington students remained free to pursue individual actions. Cite. The District cannot invoke a nonbinding settlement to avoid adjudication of its own conduct.

***

Most importantly, the District's rule would do real damage. Under its view, LEAs would be beyond the reach of due process on any issue addressed in § 1412—including age eligibility, least restrictive environment, child find, and services for students enrolled in private schools—whenever they can point to contrary state law, even in the face of a clear federal command. That would sharply curtail disabled students' access to justice. It would effectively strip away their rights to challenge district action under 20 U.S.C. 1415 whenever a school district claims "state law made us do it." That is not the statute Congress created. Both the SEA and LEA have obligations to students. Exiting a student prior to their twenty second birthday denies that student a Free Appropriate Public Education. That is exactly what the District did here, and they should be accountable to that student. It should not require separate federal lawsuit, as the district implies is

necessary.

## IV. CONCLUSION

The District's position, reduced to its essence, is this: a school district may deny a disabled student the education federal law guarantees, and no one may hold it accountable, so long as the State told it to do so. The courts below erroneously adopted this position. But that is not how due process under the IDEA works, nor is that how federal law works.

S.P. was entitled to special education through her twenty-second birthday. The District exited her early, thus denying her special education services. That denial happened. The District cannot make it disappear by relabeling this as a state-only case, by stretching Section 1413 into an immunity provision, or by pointing to a settlement that expressly preserved individual suits. The question on appeal is straightforward: whether SSD may escape liability for denying S.P. a FAPE because it followed an unlawful state policy. The answer is no.

The Court should reverse the district court's order and remand with instructions to remand to the Office of Administrative Hearings for determination of the appropriate remedy.

RESPECTFULLY SUBMITTED this 8th Day of May, 2026.

_/s/Alex Hagel_________________
Alex Hagel
Lara Hruska
CEDAR LAW LLP
600 1st Ave., Ste 330,
PMB 96563,
Seattle, WA 98104-2246
alex@cedarlawllp.com
Telephone: 206-607-8277

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the requirements of Circuit Rule 32. The brief is proportionately spaced in 14-point type. According to the word processing system used to prepare the brief, the word count of the brief is 4671, not including the corporate disclosure statement, table of contents, table of citations, certificate of service, certificate of compliance, statement of related cases, and any addendum containing statutes, rules or regulations required for consideration of the brief.

DATED this 8th day of May, 2026.

*/s/ Alex Hagel*
Alex Hagel
*Attorney for Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the 9th Circuit E-Filer Portal.

Participants in the case who are registered CM/ECF users will be served by the 9th Circuit E-Filer Portal.

Date: 8th day of May, 2026 *|s| Alex Hagel*
*Attorney for Appellants*